PROVOSTY, J.
The evidence in this case leaves no room for doubt that plaintiff fell as she was stepping down from the kitchen door to the concrete pavement in the backyard at her daughter’s house, leased from defendant, and that the cause of her fall was that the one step between the kitchen door and the pavement was not securely fastened to the house, so that it gave way under her foot. And there is nearly as little room for doubt that the insecurity of the step was due to the fact that the sill of the house to which it was nailed was rotten. Plaintiff and her two daughters and her son and son-in-law testify to this and a photograph in the record shows the rottenness as plain as day.
After the step had been renailed and refastened by plaintiff’s son-in-law as best he could, the defendant made an inspection of the place, accompanied by a contractor and a carpenter. They testify that they saw no sign of rottenness. The only test they made was by the contractor jumping up and down on the step. This was no test at all, because the weak point in the step was in its attachment to the house owing to the rottenness of the sill, so that its ability to withstand perpendicular pressure was no proof that very little lateral pressure might not cause it to move away from the house and capsize, as happened on the occasion in question.
Plaintiff in falling thrust her hand into a pan of hot ashes and cinders she was carrying, and was severely burned. This was attended to by a physician. Six days later the same physician was called to attend plaintiff, and found her in bed, “suffering a severe hemorrhage,” and on that day she miscarried. She suffered greatly from loss of blood, and was extremely anemic for months.
[1] Defendant and her carpenter testify to having made inspection of the premises, and discovered nothing wrong or needing attention. But this does not relieve her from liability. Article 2695, C. C., reads:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the. existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
[2] The guest of the lessee as plaintiff was in this case, stands in the shoes of the lessee for invoking the benefit of this codal provision. Ciaccio v. Cabajal, 145 La. 869-886, 83 South. 73.
[3] Defendant contends that the lessee himself should have made this step safe, and deducted the expense from the rent. C. O. art. 2694. But how could he have done this when the defect was not apparent, and he knew nothing of it?
Counsel would have it that the lessee did know, because to the question, “Q. If you say that the nails of this step were rusty, that the sill was rotten, did you notice that?” he *925 answered, “a. Tés, sir.” But, as very clearly appears from the rest of the testimony of the witness, in saying this he had reference to knowledge acquired after the accident. Elsewhere he says:
“Before it fell, it looked good; you could not see the rotten part then. It was after the step had fallen down; that is where you saw the rotten part.”'
[4] All circumstances considered, we think the amount of damages ought to be fixed at $2,000.
It is therefore ordered, adjudged, and decreed that the judgment appealed from, which dismissed plaintiff’s demand, be set aside, and that plaintiff have judgment against defendant in the sum of $2,000, with costs in both courts.
O’NIELL,' J., considers the amount of the judgment excessive.