(111 So. 495)

No. 27863.

**KLEIN v. YOUNG et ux.**

**In re KLEIN.**

(Nov. 29, 1926. Rehearing Denied Jan. 31, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant** ⬅164(2)—**Obligation imposed on owner for injuries resulting from neglect to keep building repaired arises ex delicto (Civ. Code, art. 2322).**

Obligation imposed on owner of building, under Civ. Code, art. 2322, to answer in damages to person injured by neglect of owner to keep building in repair, arises ex delicto.

2. **Landlord and tenant** ⬅167(3)—**Person injured while lawfully on premises has right of action against owner, neglecting to keep building repaired (Civ. Code, art. 2322).**

Right of action, under Civ. Code, art. 2322, against owner of building, for injuries resulting from neglect to keep building in repair, is in favor of one injured while lawfully on premises or inside of building, as well as in favor of neighbors and passers-by.

3. **Landlord and tenant** ⬅167(3)—**Lessee cannot absolve owner from responsibility to third person, injured in consequence of owner's neglect of duty imposed by law.**

Lessee cannot, by assuming obligation, absolve owner of building from responsibility to third person, who may be injured in consequence of owner's neglect of duty imposed by law.

4. **Landlord and tenant** ⬅164(5)—**Landlord cannot, by contract with lessee, escape obligation arising ex delicto for injuries to roomer of lessee, resulting from collapse of stairs (Civ. Code, arts. 670, 2315, 2322, 2693–2695).**

Owner of building cannot, by contract with lessee, escape responsibility for obligations arising ex delicto to one renting a room from lessee, and injured when stairs gave way, under Civ. Code, arts. 670, 2315, and 2322, creating liability in damages for injuries to others, resulting from owner's neglect to keep building in repair; articles 2693–2695 being inapplicable.

Overton and St. Paul, JJ., dissenting, and Thompson, J., dissenting in remanding, but otherwise concurring.

Certiorari to Court of Appeal, Parish of Orleans.

Action by Mrs. Amelia Gallman Klein against Jacob Young and wife. Judgment for plaintiff was reversed by the Court of Appeal, and plaintiff brings certiorari. Judgment annulled, and case remanded to Court of Appeal.

Eugene Stanley, Maurice Rooney, and M. C. Scharff, all of New Orleans, for relatrix.

Dart & Dart, of New Orleans, for respondents.

O'NIELL, C. J. The question in this case is stated in the opinion by the Court of Appeal (Gallman v. Young, 3 La. App. 758) thus:

"Can a lessor, by contract, shift from himself to his lessee the primary obligation imposed on the lessor by law of seeing to the safety of his building, so as to absolve himself from all responsibility to others who derive through his lessee the right to be on the leased premises?"

The plaintiff, whose occupation was that of a practical nurse, occupied a room which she rented from Mrs. Agnew, in a house owned by the defendants and leased to Mrs. Agnew. A part of the back stairs gave way while plaintiff was going from the house to the yard and she fell and fractured her hip. She was seriously injured and permanently crippled by the accident. The cause of the accident was that the stairs had become defective and dangerous because of neglect to repair them. She sued the owners of the building for $10,000 damages, and was allowed $5,000 by the judgment of the civil district court. The Court of Appeal reversed the judgment and rejected the demand. The case is before us on a writ of review.

The defendants denied that the accident was caused by any defect in the stairs, and averred that it was caused by negligence on the part of the plaintiff; but they relied

mainly on the alternative defense that they were relieved of all responsibility for the condition of the premises by the stipulations in the contract of lease, in which Mrs. Agnew acknowledged that she received the premises and appurtenances in good condition, and agreed to keep the same in like good condition and to so return the same at the end of the lease, and in which contract it was stipulated that the lessors would not be liable for damages caused by any vice or defect in the leased premises, except in case of positive neglect to have repairs made after notice and a reasonable time, and in which contract Mrs. Agnew obligated herself "to make no sublease, nor transfer said lease in whole or in part * * * without the written consent of the lessor."

The district court and the Court of Appeal both found that the plaintiff was not a subtenant, but merely a "roomer or lodger" in the leased premises, and that there was no violation of the obligation of Mrs. Agnew "to make no sublease." The Court of Appeal concurred also in the finding of the district court "that the plaintiff was injured as claimed and that the accident was caused by the defective condition of the steps belonging to and forming part of the defendant's property." Having found the facts to be with the plaintiff, the Court of Appeal decided to reverse the judgment of the district court solely because of the alternative defense that the lessors had, by their contract with Mrs. Agnew, shifted from themselves to her the obligation imposed upon them by the Civil Code (article 2322) of seeing to the safety of their building, and had thereby absolved themselves from all responsibility to other persons deriving the right or invitation from Mrs. Agnew to be on the leased premises. See 3 La. App. 758.

[1, 2] It is recognized in the opinion rendered by the Court of Appeal (3 La. App. 758) that the obligation imposed upon the owner of a building to answer in damages to a person injured by neglect of the owner to keep his building in repair arises ex delicto, and that the right of action, being in tort, is in favor of one who is injured while lawfully on the premises or inside of the building as well as in favor of neighbors and passers-by. On that subject (3 La. App. 758) the Court of Appeal correctly says:

"In McConnell v. Lemley, 48 La. Ann. 1438, 20 So. 887 [34 L. R. A. 609, 55 Am. St. Rep. 319], the court declared this obligation or duty on the part of the owner to exist only in respect to neighbors and passers-by. This ruling obtained for over eight years, when, in Schoppel v. Daly, 112 La. 291 [201], 36 So. 322, the restriction thus made was overruled, and the duty of the owner to keep his building safe was extended so as to protect those rightfully within as well as those without the building. This we understand to be still the law, repeatedly recognized in the following decisions: Cristadoro v. Von Behren's Heirs, 119 La. 1025, 44 So. 852 [17 L. R. A. (N. S.) 1161]; Boutee v. New Orleans Terminal Co., 139 La. 946, 72 So. 513.; Wise v. Lavigne, 138 La. 218, 70 So. 103; Allain v. Frigola, 140 La. 982, 74 So. 404; Ciacio v. Carbajal, 143 [142] La. 125 [76 So. 583]; Id., 145 La. 869, 83 So. 73; Thompson v. Cook, 147 La. 922, 86 So. 332; Harris v. Tennis, 149 La. 295, 88 So. 912; Breen v. Walters, 150 La. 578, 91 So. 50; Davis v. Hochfelder, 153 La. 183, 95 So. 598."

[3] There are several articles in the Civil Code on this subject. Article 670 makes every owner of a building liable in damages to any neighbor or passer-by who is injured by the fall of any part of the building, through negligence on the part of the owner to keep his building in repair. Article 2322 makes every owner of a building answerable in damages to any person who is injured—either while rightfully inside or while outside of the building—by an accident resulting either from the owner's neglect to repair the building or from a vice or defect in its original construction. Articles 2693–2695 impose upon every lessor of a building the obligation to keep it in repair (except as to the minor repairs listed in article 2716), to guarantee the

lessee against vices or defects and to indemnify him if he suffers any loss in consequence of any vice or defect in the leased premises. Articles 2693–2695 are under the title dealing with the contract of lease in the section defining the obligations of the lessor. They import into every contract of lease, where there is no stipulation on the subject, the obligation of warranty on the part of the lessor to keep the building in repair, which obligation is in favor of the lessee only, and has nothing to do with the obligation resulting ex delicto in favor of any other person injured in consequence of neglect on the part of the owner of a building to keep it in repair. The lessee may, of course, as a condition of the contract of lease, dispense with the implied warranty in his favor, under articles 2693–2695, in which event, of course, no sublessee can enforce it. But the lessee cannot, by assuming the obligation, absolve the owner of the building from his responsibility to third persons who may be injured in consequence of the owner's neglect of a duty imposed by law in their favor.

Article 2322, which is the law governing this case, is in the chapter treating "Of Offenses and Quasi Offenses," and beginning with the declaration that every one is obliged to repair whatever damage his fault or negligence causes to another.

The doctrine of the decision of the Court of Appeal in this case, stated broadly, is that a person may absolve himself from the responsibility imposed upon him by law, to repair whatever damage his fault or negligence may cause to others, by contracting with some one else to assume the responsibility. There is no authority in the Civil Code or in the decisions of this court or elsewhere for that proposition.

In Steppe v. Alter, 48 La. Ann. 363, 19 So. 147, 55 Am. St. Rep. 281, speaking of the obligations imposed upon the owners of buildings, by article 2322 of the Civil Code, in favor of the public, the court said:

"The owner of the building cannot free himself from this primary obligation by leaving to an insurance company, which, carrying a policy on the building, had elected, after a fire, to make repairs upon it, to determine the necessity of and the extent of repairs. He cannot, as between himself and the public, shift responsibility from himself to the insurance company. The insurance contract may fix and determine the rights and obligations of the parties thereto, but it is not a measure for the rights of the public, nor a criterion by which to test the liability of the owner to it."

In Badie v. Columbia Brewing Co., 142 La. 853, 77 So. 768, it was held:

"The owner of a leased building is responsible in damages for personal injuries suffered by a visitor or guest of the tenant as a result of the owner's failure to make repairs necessary to maintain the building in a safe condition, even though the tenant was warned of the unsafe condition of the premises, and could not have recovered damages if the accident had happened to him or her."

And in the text of the opinion it was said:

"A visitor or guest of the lessee or tenant of a building is not bound or affected by any obligation of the tenant to the landlord with regard to maintaining the premises in a safe condition. The owner of a building cannot, by any contract or agreement with the lessee, tenant or subtenant, absolve himself of responsibility to others for injuries resulting from a failure to maintain the leased premises in a safe condition."

In Clay v. Parsons, 144 La. 985, 81 So. 597, we held that the responsibility imposed upon property owners by article 2322 of the Code was subject to the general law of negligence, and that a lessee or any other person desiring to occupy a building and willing to assume the risk might, for himself but not as far as others were concerned, absolve the owner from responsibility for personal injuries resulting from his neglect to keep the property in repair; to which we added:

"The decision in Ciaccio v. Carbajal, 142 La. 125, 76 So. 583, relied upon by plaintiff, is authority for the proposition merely that the wife is not bound by an obligation of her husband in that respect. The ruling has no application to this case, where the wife expressly assumed the risk."

It seems that the Court of Appeal construed the decisions in the following cases as being, in some measure, authority for the decision rendered in this case, namely: Brodtman v. Finerty, 116 La. 1103, 41 So. 329; Bianchi v. Del Valle, 117 La. 587, 42 So. 148; Schoppel v. Daly, 112 La. 201, 36 So. 322; Cristadoro v. Von Behren's Heirs, 119 La. 1025, 44 So. 852, 17 L. R. A. (N. S.) 1161; Ciaccio v. Carbajal, 145 La. 869, 83 So. 73; Thomson v. Cooke, 147 La. 922, 86 So. 332; and Harris v. Tennis, 149 La. 295, 88 So. 912. An examination of these decisions, which we will now explain, shows that, though there are misguiding expressions in some of them, none of them is authority for the doctrine announced by the Court of Appeal in this case.

In Brodtman v. Finerty, the tenant and his wife sued the landlord for damages inflicted upon her hand by the falling of a shutter while she was attempting to close it; the negligence charged to the landlord being that he had neglected to supply a new hinge, in place of one that was broken. Neither the wife nor the husband had a right of action, because, under articles 2715 and 2716 of the Civil Code, it is the duty of the tenant, not the landlord, to make "the repairs * * * to windows, *shutters*, * * * locks and *hinges*." The case was not one where a landlord attempted to absolve himself from responsibility for negligence by contracting with some one else to assume the responsibility. There was no obligation *imposed by law* upon the landlord to repair shutters or hinges. That decision and Bianchi v. Del Valle were referred to and explained in Boutte v. New Orleans Terminal Co., 139 La. at pages 951 to 953, 72 So. 513. Both decisions were also referred to in Ciaccio v. Carbajal, 142 La. 127, 76 So. 583, where they were said to be not authority for the proposition announced by the Court of Appeal in this case. Here is what Chief Justice Provosty, for the court, said of those cases:

163 La.—3

"But does the wife in such a case have to claim through her husband, the lessee, and are her rights to be measured by his? In two cases it has been so held (Brodtman v. Finerty, 116 La. 1103, 41 So. 329, and Bianchi v. Del Valle, 117 La. 590, 42 So. 148), but more by way of obiter dictum than otherwise, as has been very well pointed out in Frank v. Suthon (C. C.) 159 F. 174, and upon citations which relate to entirely different propositions. Thus, in Bianchi v. Del Valle the authorities cited have reference to the minimizing of damages; and in Brodtman v. Finerty the authority cited (18 Am. & Eng. Ency. of L. 217) has reference to a suit brought by the lessee himself. In those two cases [Brodtman v. Finerty and Bianchi v. Del Valle] the court lost sight entirely of article 2322, reading:

" 'The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.'

"And in those two cases the court lost sight also of the decision in Schoppel v. Daly, 112 La. 201, 36 So. 322, where, interpreting said article, this court held that the wife had an action in her own legal right ex delicto under it, independently altogether of the lease contract.

*"We know of no provision of law making an exception to said articles 2315 and 2322 by which their scope should be limited so as not to include the members of a lessee's family or the guests or other persons on the leased premises by invitation of the lessee. As to a person other than the wife the scope of the article was so extended in Cristadoro v. Von Behren, 119 La. 1025, 44 So. 852, 17 L. R. A. (N. S.) 1161."* (Italics ours.)

In Boutte v. Terminal Co., 139 La. 953, 72 So. 515, we called attention to the fact that, in Bianchi v. Del Valle, the wife's demand "was rejected because the court found that [she] the plaintiff had only suffered a slight temporary hurt, *not serious enough to justify allowing her any damages.*" Hence we said, of that decision:

"It must also be observed that, after the court concluded that Mrs. Bianchi was not hurt seriously enough to justify allowing her any damages, the subsequent expressions regarding the right or duty of her husband, as the tenant of Del Valle, to make necessary repairs, were mere obiter dicta."

Schoppel v. Daly is authority for a doctrine contrary to that announced by the Court of Appeal in this case, viz.:

"The existence of contractual relations between two parties is no bar to a right of action for tort committed pending the contract, and connected with it, though the contract may more or less affect the rights and obligations of the parties"—meaning, of course, the parties to the contract. " * * * The right of the wife for damages for personal injury to herself is distinct from that of the husband to recover damages by reason of his contractual relations with his lessor."

We referred to that decision in Illinois Central Railroad Co. v. New Orleans Terminal Co., 143 La. 474, 78 So. 740, where Chief Justice Provosty, for the court, said:

"What the court held in Schoppel v. Daly, 112 La. 201, 36 So. 322, was simply that 'the existence of contractual relations between two parties is no bar to a right of action for tort committed pending the contract, and connected with it, though the contract may more or less affect the rights * * * of the parties' "—meaning, of course, the parties to the contract.

In Cristadoro v. Von Behren's Heirs, the court did not maintain the doctrine announced by the Court of Appeal in this case, but, on the contrary, held that, assuming arguendo the doctrine to be sound, the plaintiff, Mrs. Cristadoro who, while visiting the tenant, was injured by the breaking down of a wharf belonging to the leased premises, had a right of action against the owner of the property, even though the tenant might not have had a right of action if she had suffered the injury. Here is what the court said, the first paragraph being merely hypothetical and not an announcement of a correct doctrine, viz.:

"It may be that, with regard to all those who derive through the lessee the right to be on the leased premises, the lessor may by contract shift from himself to the lessee the duty of seeing to the safety of the building, and may in that way absolve himself from all duty towards the guests of the lessee. * * *

"In this Lemley Case"—referring to McConnell v. Lemley, 48 La. Ann. 1433, 20 So. 887,

34 L. R. A. 609, 55 Am. St. Rep. 319, which was overruled in Schoppel v. Daly, and again in Boutte v. Terminal Co.—"the court would restrict article 2322 to neighbors and passersby, on the score of its being a police regulation of the safety of houses; but, if it is of that character, a fortiori ought it to apply to those inside of the house."

Ciaccio v. Carbajal is the same case that is reported in 142 La. 125, 76 So. 583. It is a strange coincidence that the accident that befell Mrs. Ciaccio happened very much as in the present case, in that "the steps leading from the kitchen to the yard * * * broke down under her weight, causing her to fall and fracture her left arm." The district court dismissed the suit on an exception of no cause or right of action, on the ground that it was the duty of the plaintiff's husband, as lessee of the premises, to repair the steps, which was neglected. The first appeal (142 La. 125, 76 So. 583) was from that judgment, and this court reversed the judgment and remanded the case for trial on its merits, saying:

"Under Civ. Code, art. 2315, providing that every act of man that causes damage to another obliges him by whose fault it happened to repair it, and article 2322, providing that the owner of a building is answerable for the damage occasioned by its ruin when this is caused by neglect to repair it, though a lessee cannot recover for injuries caused by the landlord's failure to make such repairs as the lessee is authorized by the Code to pay for out of the rent, *the fact that the lessee might have paid for repairs out of the rent does not prevent a recovery for injuries to the lessee's wife, as liability under article 2322 cannot be restricted to neighbors or passengers, in view of article 670, expressly providing that every one is bound to keep his buildings in repair, so that neither their fall, nor any part of the materials composing them, may injure neighbors or passengers.*" (Italics ours.)

Mrs. Ciaccio's Case was therefore tried on its merits, by the judge who had dismissed it on the exception of no cause or right of action, and, after hearing the evidence, he again rejected the demand. On the second appeal (145 La. 869, 83 So. 73) the judgment was re-

versed again, and the plaintiff was allowed damages in the sum of $2,500. Therefore, what was said in reference to the proposition which is now advanced in the opinion by the Court of Appeal in the present case was only an academic discussion of the proposition, which was not sustained by the decision, and was genuine obiter dictum. The learned author of the dissertation gave an illustration, which is quoted in the opinion by the Court of Appeal in the present case, but which, in our judgment, is far from the point, viz.:

"Any limitation, whether by contract or law, upon the right of the lessee, with respect to the use of such premises, must necessarily extend to those who claim under him. If a contract of lease, or the law, declares that certain leased premises shall not be used for a particular purpose, they can no more be so used by the family or friends of the lessee, claiming through him, than by the lessee himself, and so, if the contract of lease, or the law, declares that the lessor shall not be liable for injuries sustained by the lessee by reason of the nonrepair of the leased premises, the family or friends of the lessee, receiving injuries by reason of such nonrepair, while on the premises in the right of the lessee, cannot recover that which he would have no right to recover."

[4] The fundamental error in the foregoing illustration is in overlooking the distinction between the rights and obligations which are created by law and those which are created by contract. The obligation of every property owner to answer in damages for a failure to keep his property in such condition of repair that it will not be dangerous to other persons is imposed by law, by articles 670, 2315 and 2322 of the Civil Code. The obligation of a property owner to allow another person to use the property for any particular purpose can be imposed only by contract; and the obligee, in such case, of course, cannot convey to a third party any greater right than the obligee has acquired by virtue of the original contract. If it is stipulated in a contract of lease that the lessee shall make all necessary repairs to the leased premises,

a sublessee, of course, cannot compel the lessor to bear the expense of any necessary repairs. But that has nothing to do with obligations arising ex delicto, from articles 670, 2315 and 2322 of the Civil Code.

The doctrine regarding the right of a lessee (under Rev. Civ. Code, art. 2694) to make needed repairs and deduct the cost from the rent due to the landlord was not stated correctly in the first appeal in Ciaccio v. Carbajal, but was stated correctly in Boutte v. New Orleans Terminal Co., 139 La. 945, 72 So. 513, and was repeated and reaffirmed in the second appeal in Ciaccio v. Carbajal, 145 La. 869, 83 So. 73, and again in Shelton v. Masur, 157 La. 621, 102 So. 813, viz.:

"The jurisprudence to the effect that a lessee cannot knowingly and intentionally permit an injury to occur from the need of repairs"—such as damages which occur from a leaky roof— "that he himself might make with the rent due the lessor, and thus impose upon the lessor a loss greater than the repairs would have cost, has no application to an unforeseen accident, such as the collapse of the leased building or of a part of it. * * *
"The lessee is not at fault for not making repairs to the leased premises except as to those which, by article 2716 of the Civil Code, he is required to make. * * *
"The lessee's right to make the necessary repairs, which, primarily, the lessor should make, does not affect the guaranty imposed by article 2695 of the Civil Code upon the lessor, to protect the lessee from any vice or defect in the leased premises and to indemnify him for any loss resulting therefrom. Nor does the lessee's right to make the necessary repairs that the lessor has neglected to make diminish the obligation imposed by articles 670 and 2322 of the Civil Code upon all owners of buildings, to keep them in repair, under penalty of having to answer for any damages that result from their going to ruin, or from the fall of any part of the material composing them."

In Thomson v. Cooke, the district court rejected the plaintiff's demand, but this court reversed the judgment and gave her $2,000 damages. Therefore that decision is not authority for the doctrine that a guest of a lessee has no right of action for damages against the landlord under article 2322 of the

Civil Code unless the lessor himself would have had a right of action if the accident had befallen him, viz.:

"A guest of a lessee, injured by reason of a defect in a step, stands in the shoes of the lessee for invoking the benefit of Civ. Code, art. 2695, under which the lessor guarantees the lessee against all vices and defects in building."

But how about the right of a guest of a lessee for invoking the benefit of Civ. Code, art. 2322, under which the obligation of the landlord arises ex delicto?

In Harris v. Tennis, 149 La. 295, 88 So. 912, the repair which was neglected and the neglect of which was said to have caused the accident, was the repair of a rotten window frame. The ruling was, as in the case of Brodtman v. Finerty, that the law did not impose the obligation upon the lessor, but, by article 2716, imposed the obligation upon the lessee, to make minor repairs such as to *windows*, shutters, hinges, etc. The opinion in Harris v. Tennis consists of only a few lines, the whole case being stated in the syllabus, thus:

"A wife was not entitled to recover under Code, art. 2717, for personal injuries received, owing to the rottenness of a window frame of a house leased by defendant to her husband, in which they lived; the appliance for holding up the sash giving way, and the sash falling upon her hand and crushing it, in view of article 2716, the husband, and not the lessor, being at fault."

The point of distinction is that in that case the law did not impose the obligation upon the landlord to make the repair that was neglected.

In the latest case on this subject, Breen v. Walters, 150 La. 578, 91 So. 50, it was said:

"In the case of Allain v. Frigola, 140 La. 982, 74 So. 404, this court held that the owner is bound to know whether his building is safe for the purposes for which he rents or authorizes its use, or is rotten or unsafe, and is answerable in damages to those who being lawfully therein, are injured by reason of its defects, whether of original construction or caused by failure to make proper repairs.

"The lessor is responsible in damages to the lessee and his family for personal injuries *through violation of his general primary obligations to keep his building safe.* Schoppel et al. v. Daly et al., 112 La. 201, 36 So. 322; Wise v. Lavigne, 138 La. 218, 70 So. 103; C. C. articles 670, 2322." (Italics ours.)

The *opinion rendered by the Court of Appeal* in this case is in accord with the common law, as expressed in McConnell v. Lemley, 48 La. Ann. 1433, 20 So. 887, 34 L. R. A. 609, 55 Am. St. Rep. 319, so often declared overruled. At common law, the obligation is on the tenant, not the landlord, to keep the property in repair. 16 R. C. L. 1030 et seq.

"The logical conclusion from the principle that the landlord is under no implied obligation to repair is that a landlord not under contract to repair is not responsible to the tenant for injuries to person or property caused by defects in the rented premises. * * * The subtenant, servant, employee, guest or customer of the lessee is also deemed to be under the same restriction, because he enters under the same title, and not by any invitation, express or implied, from the owner, and hence assumes the same risk." 16 R. C. L. 1034, 1035, § 555.

At common law, in the absence of a statute such as article 670 or 2322 of the Civil Code, it is held that, even where there is a statute such as article 2695 of the Code, importing into a contract of lease an obligation on the part of the landlord to keep the premises in repair, the obligation is for the benefit of the tenant only, and that, therefore, if any one else while lawfully on the premises is injured in consequence of a neglect to keep the premises in repair, he has his recourse against the tenant, not the landlord.

"Even where, by virtue of a statute, a promise to repair is imported into a contract of letting [as it is by article 2695 of the Civil Code], such provision is for the sole benefit of the tenant. The implied covenant of the lessor that the premises shall be kept reasonably fit for human habitation runs to the lessee only, and a third person, such as an employee of the tenant, is not entitled to recover from the lessor for injuries sustained by reason of a defective condition of the premises permitted by the lessor to continue. So, also, *under the generally accepted view that the*

*landlord is not liable in tort* to the tenant for injuries arising from defects in the demised premises, even where there is a covenant to repair, unless it appears that the defects existed when the premises were leased, and that the landlord had knowledge of them and concealed them from the tenant, it is usually held that there can be no recovery for injuries thus occasioned to the tenant's family, servants, guests, or others entering under his title. There are, however, decisions to the effect that a servant of the tenant may recover against the landlord for injuries occasioned by a defect in the premises created or suffered to remain by him, although the tenant, by reason of his own fault or neglect or knowledge of the danger, could not have maintained an action for injury suffered by himself." (Italics ours.) 16 R. C. L. 1068, § 588.

The common law, in the absence of a statute such as articles 670 and 2322 of the Civil Code, is repeated thus in 16 R. C. L. 1096, § 614, viz.:

"It is the business of the tenant, in the first instance, to see that the building and its approaches are safe for those coming there by his invitation, express or implied, and, if he negligently permits the building or the access to it to be in an unsafe condition, he is liable for an injury occasioned thereby to such persons. *Whatever may be the rights and duties respectively of landlord and tenant, as between themselves, the latter cannot, by the terms of the lease, be discharged from the duty to his guests or customers of caring for their safety,* and it is the well-settled general rule that such persons must seek redress for injuries sustained by them by reason of defects in the premises from the tenant and not from the landlord. *If one leases premises, and the landlord covenants to keep them in repair, but the lessee's employee is injured by their becoming out of repair, the master is primarily liable to his servant, but has a remedy over against the landlord, on the covenant, to recover the amount which the master or lessee has been legally obliged to pay the employee on account of such injury."* (Italics ours.)

It appears, therefore, that, at common law, if the landlord covenants to assume the obligation to keep the premises in repair, he does not thereby take away the right of a person injured in consequence of neglect to keep the premises in repair to sue and re-cover from the tenant for the injury. That is the corollary of the doctrine prevailing in this state, where articles 670 and 2322 of the Code make the landlord liable in tort, that the landlord cannot absolve himself from his liability towards other persons than the lessee, by covenanting with the latter that he shall assume the liability.

In some of the common-law states, in the absence of a statute like article 670 or 2322 of the Civil Code, the courts recognize the distinction that was made in the overruled case of McConnell v. Lemley, between neighbors and passers-by, on the one hand, and persons who, though not lessees, are lawfully in or upon the leased premises, such as guests, customers, or servants of the lessee. The decision in McConnell v. Lemley was merely an erroneous application of the rule prevailing in jurisdictions where there was no statute like article 2322 of the Civil Code, making the landlord liable in tort to any person lawfully on the premises and injured in consequence of the landlord's failure to keep his building in repair, or a statute like article 670 of the Code, making the landlord liable also to neighbors and passers-by, for his neglect to keep his building in repair. In 92 Am. St. Rep. p. 508, in the note to Griffin v. Jackson Light & Power Co., 128 Mich. 653, 87 N. W. 888, 55 L. R. A. 318, the first case cited in support of that distinction, at common law, is the overruled case of McConnell v. Lemley, viz.:

"Third persons, as respects their rights against the lessor of property for injuries received from the condition or use of such property, are divisible into two classes. Of these the first includes those who are strangers to the landlord and the tenant. Such are travelers upon the highway adjoining the leased property, the owners or occupants of adjoining or neighboring premises, etc. The rights of persons such as these are affected in no way by any assumption of risks. They are upon premises other than those covered by the lease, or upon a common highway, and their right to be there in no way depends upon any contractual relation between the landlord and tenant.

"The second class, on the other hand, are persons on the premises by the license of the tenant. Such are the servants, employees, invited guests, licensees, customers, etc., of the tenant. Their right to be upon the premises, if they have any such right, must have arisen from a license or invitation of the person in possession; i. e., the tenant. Unlike those of the first class, their only right upon the premises is such as the tenant has given them expressly or by implication, and depends, therefore, upon the contract of letting between the lessor and the lessee. See, for cases in which this distinction is brought out, McConnell v. Lemley, 48 La. Ann. 1433, 20 So. 887 [34 L. R. A. 609] 55 Am. St. Rep. 319," etc.

In Cristadoro v. Von Behren's Heirs, supra, Chief Justice Provosty, for the court, explained that the distinction made in McConnell v. Lemley, between the property owner's duty to neighbors and passers-by, on the one hand, and his duty to persons lawfully in or on the premises, on the other hand, was not in accord with the opinion of the French commentators on article 1386 of the Code Napoléon, corresponding with article 2322 of the Louisiana Code. The Chief Justice said:

"In this Lemley Case the court would restrict article 2322 to neighbors and passers-by, on the score of its being a police regulation of the safety of houses; but, if it is of that character a fortiori ought it to apply to those inside of the house.

"The French writers, interpreting article 1386, Code Napoléon, which is the article corresponding with our above-quoted article 2322, say that the responsibility imposed by the article applies only to neighbors and passers-by, and not to those whose relations to the owner are governed by contract. Larombiere on Art. 1386, vol. 5, No. 3, p. 794; Demolombe, vol. 31, No. 659, p. 568; Laurent, vol. 20, No. 644, p. 696; 3 Fuzier-Hermann, p. 917, No. 16; Id. p. 918, No. 32. We suspect the organ of the court in the Lemley Case understood this to mean that the responsibility imposed by article 1386 (our article 2322) is absolutely restricted to neighbors and passers-by—i. e., to those outside of the house—and does not extend to those inside. But such is not the idea intended to be conveyed. What is meant is simply that the relations of those who have a contract are governed by the contract, and the relations of those who have no contract are governed by the general principles of the law embodied in this and other articles of the Code. In other words, the line of cleavage is between those who have and those who have not a contract, and not between those who are outside and those who are inside of the house. These writers certainly do not mean to say that the visitor has a contract with the lessor, or that he may recover from the tenant when it is the owner that is in fault."

In Boutte v. New Orleans Terminal Co., 139 La. 952, 953, 72 So. 515, we again called attention to the fact that McConnell v. Lemley had been twice overruled. Speaking of an expression in Brodtman v. Finerty, we said:

"And it was said that, if the lessee's wife was to be considered a third person, not bound by the obligations of the lessee, she would, under the doctrine of McConnell v. Lemley, 48 La. Ann. 1423, 20 So. 887, 34 L. R. A. 609, 56 Am. St. Rep. 319, 'have to look to the lessee, and not to the lessor, for damages.' This latter expression, however, is not a correct doctrine, since the decision announcing it (McConnell v. Lemley and the companion case of Prechter v. Lemley, 48 La. Ann. 1439, 20 So. 1019) had already been, in effect, overruled by the decision in Schoppel v. Daly, 112 La. 212, 36 So. 322, and were again expressly overruled in Cristadoro v. Von Behren's Heirs, 119 La. 1028, 44 So. 852, 17 L. R. A. (N. S.) 1161."

Again, in Ciaccio v. Carbajal, 142 La. 129, 76 So. 584, Chief Justice Provosty, for the court, referred to McConnell v. Lemley thus:

"But even if this restrictive interpretation were proper under the French Code, it would not be proper under ours, for we have an article providing specially for injury to 'neighbors or passengers' from the ruin of buildings; and, if article 2322 were thus restricted to 'neighbors and passengers,' it would be made simply to repeat what had already been said in a previous article of the Code, and thus would be robbed of all utility. It would be made to say something it has not said, and which had already been said in express terms in a previous article. Thus: [Here the Chief Justice quoted article 670, applying to neighbors and passers-by.]"

In the second appeal in Ciaccio v. Carbajal, 145 La. 885, 886, 83 So. 79, Chief Justice Monroe, for the court, called attention to the difference between the common law and the arbitrary rule established by articles 670 and

2322 of the Civil Code. After quoting from 34 L. R. A. 824, the common law to the effect that the lessee is primarily responsible for the condition of the leased premises, the Chief Justice said:

"So, therefore, unless the courts of the common-law states are dealing with cases which are governed by statutes, or warranties" (meaning statutes like articles 670 and 2322 and warranties such as the implied warranty imposed by article 2695 of the Code), "their decision can throw but little light upon the questions here at issue. The law of Louisiana which seems pertinent to those questions is found in the following articles of the Civil Code, to wit," etc.

In 16 R. C. L. 1084, § 601, McConnell v. Lemley is cited in the footnote in support of the proposition:

"A statute making it the duty of the owner of a building to prevent injuries to passers-by or neighbors by the fall of his building or a part thereof, and making him liable for his neglect to keep it in sufficient repair to prevent this, binds a lessor although he has no actual knowledge of the need of repair."

And in the footnote it is said that McConnell v. Lemley has been overruled in its holding that the property owner's liability, under the Louisiana Code, is restricted to neighbors and passers-by, viz.:

"McConnell v. Lemley, 48 La. Ann. 1433, 20 So. 887, 55 Am. St. Rep. 319, 34 L. R. A. 609. In the above case it was held that the owner's liability under this statute is restricted to 'neighbors and passengers,' and does not extend to visitors and guests, but this construction has been departed from in more recent cases. Cristadoro v. Von Behren, 119 La. 1025, 44 So. 852, 17 L. R. A. (N. S.) 1161."

If the doctrine of McConnell v. Lemley is to be reinstated, it would better be done by the Legislature. It was overruled more than 22 years ago, in Schoppel v. Daly, 112 La. 201, 36 So. 322, and the overruled doctrine has been rejected in so many subsequent decisions that the law on the subject is too well settled now to be reconsidered by the courts.

Inasmuch as the Court of Appeal did not consider the quantum of damages allowed by the district court, or formally decide anything by its decree except that the plaintiff had no right of action against the defendants in this suit, we have concluded to remand the case to the Court of Appeal for final decision.

The judgment is annulled and the case is ordered remanded to the Court of Appeal for further and final proceedings consistent with the foregoing opinion.

OVERTON and ST. PAUL, JJ., dissent.

THOMPSON, J., dissents in remanding the case, but otherwise concurs.