286 So.2d 802 (1973)
GENERAL LEASING COMPANY
v.
LEDA TOWING COMPANY, INC., et al.
No. 5877.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Rehearing Denied January 8, 1974.
Writ Refused March 1, 1974.
*803 Kent Satterlee, Jr., and Robert J. A. Williams, Satterlee & Mestayer, New Orleans, for General Leasing Co.
Joseph Accardo, Jr., Chaisson & Accardo, La Place, for Leda Towing Co., Inc., and others.
Before SAMUEL, BOUTALL and FLEMING, JJ.
BOUTALL, Judge.
This is a suit by the lessor of certain electronic equipment against the lessee to recover the remaining unpaid monthly rentals under a written contract of lease. The trial court rendered judgment holding the lease invalid and dismissed plaintiff's suit. The plaintiff appeals.
By contract of lease executed August 1, 1967, Leda Towing Company, Inc., leased three units of electronic equipment from General Leasing Company for a term of sixty months at a stipulated monthly rental of $156.93 plus taxes. The leased items consisted of 1) an AM Radio Telephone; 2) a VHF-FM Radio Telephone; and 3) a Radar system; together with all the components necessary to their operation. Appearing in the lease as sureties for the defendant, Leda Towing Company, Inc. were the other two defendants, Leon C. Vial, III, and David J. Vial, who bound themselves personally with Leda Towing for the execution of all obligations incumbent upon the lessee. The leased equipment was to be installed aboard the vessel Syrinx, a towboat owned and operated by Leda Towing Company. The record shows that eighteen monthly payments were made by Leda Towing Company, concluding with a double payment on February 10, 1969. The lease agreement shows that it was also necessary to make five monthly payments at the commencement of the lease, and this was paid by Leda Towing Company.
On March 5, 1969 Leda Towing Company enacted a bareboat charter of the vessel Syrinx and a concurrent option to purchase with Dean Towing, Inc. Under the charter agreement Dean Towing agreed to pay all rentals for leased equipment on board the vessel. General Leasing Company was not a party to the agreements between Leda Towing and Dean Towing, although it was well aware of the agreements. Six additional monthly payments were made on the lease account by Dean Towing after Leda Towing had ceased payments, the final payment being received on October 15, 1969. Therefore a total of twenty-nine payments had been made at the time of cessation of payments, leaving 31 monthly payments unpaid.
During the existence of the charter agreement, negotiations were had between General Leasing and Dean Towing through the intermediate, Leon C. Vial, III, officer of Leda Towing, to arrange the sale of the equipment to Dean Towing. However, no final agreement was reached between the parties and no sale was ever consummated. However, on September 10, 1969, Leda Towing, pursuant to its agreement to sell, sold the vessel Syrinx to Dean Towing. After it became apparent that the sale of the leased equipment could not be consummated, a portion of the leased equipment, consisting of the main components of the Radar and the AM Radio Telephone, were removed from the vessel by Dean Towing and Leda Towing, and Leda Towing brought this equipment to the premises of General Leasing. When General Leasing refused to accept the returned equipment, the equipment was deposited upon the sidewalk in front of General Leasing's office, and General Leasing then removed the equipment inside for storage. It should be noted that General Leasing had objected prior to this *804 time to return of the equipment, and insisted upon compliance of the terms of the lease. (The remainder of the equipment is apparently still located on the Syrinx.) This event took place on November 3, 1969, and no monthly payments were made for that month or any month thereafter, thus giving rise to the present suit for recovery of these payments.
To this demand for payment, Leda Towing Company responded with an answer simply denying all of the pertinent allegations, although in an answer to interrogatories and on the trial of the merits, Leda Towing relied upon the unsuitability for use of the equipment as a defense, asserting that it was faulty, continually broke down, and could not be used for long periods of time.
It is our opinion that this constituted a special defense under the provisions of the Code of Civil Procedure art. 1005 and should have been affirmatively pleaded to permit evidence of these facts to be introduced. Nevertheless, some evidence was introducted, over objection of plaintiff, of the necessity of repairs made to the equipment, but we are of the opinion that a fair evaluation of the evidence shows that the equipment was not subject to any abnormal amount of repairs, and that the defendants have failed to carry the burden of proof in this regard.
However, the decision of the trial court was not predicated upon the merits of the equipment, but predicated upon the conditions of the lease itself. The trial judge held that the lease was invalid because it was in contravention to Louisiana Civil Code Article 11 as contrary to public policy and public good, and specifically:
"Actually, lessor has not only denied lessee the rights accruing to lessee under codal articles 2692, 2693, 2694, 2695, 2996, 2697, 2699, and 2700, but has taken these obligations imposed on lessor by law and made them the obligations of lessee to the benefit and favor of lessor. All of this with no statutory nor judicial authority to so do."
Thus the issue posed before us is basically the application of the law to the written provisions of the lease.
In support of the judgment appealed from, the lessee refers us to the following obligations imposed upon him by the lease provisions, which he contends are contrary to the above cited articles of the Civil Code as well as public policy.
Paragraph 4 of the lease provides that the lessee shall pay all costs and expenses in connection with the use and operation of the lease equipment without limitation, including installation, maintenance, storage and servicing. Article 8 requires the lessee to assume the risk of damage, loss, theft or destruction of the equipment and to agree that all replacements, repairs, etc., shall be at the sole cost and expense of lessee with title to such replacements to vest in lessor, and agrees at all times to keep the leased equipment in good and efficient working order and repair, and to return same to lessor on termination of the lease in the same good order, reasonable wear and tear excepted.
Paragraph 5 requires the lessee to insure the equipment against fire, theft, collision and losses under comprehensive coverage, insuring the interest of both lessor and lessee.
Lessee further complains that paragraph 6 of the lease requires the lessee to indemnify, protect and hold harmless, the lessor against any losses, damages, injuries, claims or demands of whatsoever kind, arising on account of the use, condition or operation of the equipment, requiring lessee to secure such liability insurance or post security in this connection. The last complaint is directed against the provisions of paragraph 11 of the lease which provide for assignment of the lease, and in connection therewith lessee is required to honor any assignment by lessor, while at the same time being required to enforce his rights only against lessor.
*805 A reference to the codal articles above cited discloses that they impose upon the lessor certain obligations of warranty, maintenance and repair of the thing leased in respect to the use for which it is hired. Consistent with these obligations, the articles prescribe remedies available to the lessee in the event of non-compliance with his obligations by lessor. While it is apparent that these articles contain provisions in conflict with the written provisions of the lease, these articles are not prohibitory laws which would be unalterable by contractual agreement but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. As was stated in the case of Klein v. Young, 163 La. 59, 111 So. 495, at page 497 (1926):
"Articles 2693-2695 impose upon every lessor of a building the obligation to keep it in repair (except as to the minor repairs listed in article 2716), to guarantee the lessee against vices or defects and to indemnify him if he suffers any loss in consequence of any vice or defect in the leased premises. Articles 2693-2695 are under the title dealing with the contract of lease in the section defining the obligations of the lessor. They import into every contract of lease, where there is no stipulation on the subject, the obligation of warranty on the part of the lessor to keep the building in repair, which obligation is in favor of the lessee only, * * *. The lessee may, of course, as a condition of the contract of lease, dispense with the implied warranty in his favor, under articles 2693-2695." * * *
Louisiana Civil Code Article 2669 defines lease as a synallagmatic contract, that is, a bilateral or reciprocal contract, in which the parties expressly enter into mutual engagements, each binding himself to the other. Contracts legally entered into have the effect of laws on those who have formed them. Louisiana Civil Code Article 1901. In the case at Bar, the provisions of Louisiana Civil Code Article 11 are particularly pertinent:
"Art. 11. Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
"But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."
We do not perceive any express or implied prohibitions by law against the provisions of the subject lease nor is there any showing that such a lease may be against the public good. It is simply a lease of certain pieces of equipment, which because of the nature of their use, are located upon moving vessels which may travel, and in fact did travel, throughout the waterways of several states, the overseeing or inspection of which is largely unavailable to the lessor, and indeed almost completely beyond his control. It would appear that electronic devices of this sort are of a rather delicate and perishable nature, and its efficiency and longevity can be severely limited by the manner of use and operation. We have no difficulty in concluding that the lease provisions above referred to are not contrary to the public good, and obviously the provisions affect only the rights of lessor and lessee.
Our jurisprudence has consistently stated that the usual warranties and obligations imposed by these codal articles may be waived or otherwise provided for in leases. The only difficulty that has arisen is the effect that such lease provisions may have upon the rights of third parties. And even in those cases in which the lessor, either as such or as owner, has been held responsible to third parties, it is clear that the contractual obligations apply insofar as the rights between lessor and lessee are concerned. For examples, we refer to the following cases: Klein v. Young, supra; Clay v. *806 Parsons, 144 La. 985, 81 So. 597 (1919); Continental Bank & Trust Company v. Times Publishing Company, 142 La. 209, 76 So. 612 (1917); Pierce v. Hedden, 105 La. 294, 29 So. 734 (1901); Alvis Hotel, Inc. v. Alvis Hotel of Monroe, Inc., 149 So.2d 199 (La.App.2d Cir. 1963); Green v. Southern Furniture Company, 94 So.2d 508 (La.App.1st Cir. 1957); Lambert v. Greene, 32 So.2d 400 (La.App.2d Cir. 1947).
For these reasons, we are of the opinion that the trial court was in error in holding that the provisions of Louisiana Civil Code Article 2692 et seq. may not be waived or altered by the written stipulations of lease between the lessor and lessee, and the judgment in favor of the defendant lessee must be reversed. Consequently, our finding as discussed above, that the defendant did not in fact prove a failure of suitability for use of the equipment, leads us to conclude that judgment should now be rendered in favor of plaintiff-lessor, for the unpaid installments of rent.
In addition to this amount, the lessor seeks recovery of reasonable attorney's fees as provided in the lease. Considering the time and effort spent on this case by the attorney, the services furnished, the responsibility assumed, the amount involved in litigation, the fact that the matter was continued several times, we are of the opinion that reasonable attorney's fees amount to the sum of $750.00.
The defendant-appellee has requested us to render judgment in its favor against Dean Towing company, based upon the third party demand filed by it. We are unable to do so because of procedural difficulties. The trial court below, apparently because of its dismissal of plaintiff's suit, made no mention in its judgment of the third party demand. Appeal was taken by plaintiff. The defendant, (third party plaintiff) did not appeal nor did it file any answer to the appeal. Under these circumstances, we are unable to consider the third party demand.
For the reasons above expressed, the judgment appealed from in annulled and reversed, and there is now judgment in favor of plaintiff-appellant, General Leasing Company, and against defendants-appellees, Leda Towing Company, Inc., Leon Vial, III, and David J. Vial, in solido, in the sum of $4,864.83, together with legal interest thereon from date of judicial demand until paid, plus attorney's fees in the sum of $750.00, and maintaining the writ of sequestration previously issued herein. The defendant-appellees shall pay all costs in both courts.
Reversed and rendered.