296 So.2d 350 (1974)
Deland R. KIRKLAND
v.
WESTERN ELECTRIC COMPANY, INCORPORATED, Defendant-Appellee, and
Hartford Accident & Indemnity Company et al., Defendants-Appellants.
No. 6189.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1974.
Rehearing Denied July 3, 1974.
*351 Adams & Reese, Timothy G. Schafer, New Orleans, for New Orleans Private Patrol Service, Inc. and Aetna Cas. & Sur. Co., defendants-appellants.
Edwins, Cave & McKay, Donald G. Cave, Baton Rouge, for plaintiff-appellee.
Ogden, Ogden & Cocke, C. B. Ogden, II, New Orleans, for Hartford Acc. & Indemn. Co., third-party plaintiff-appellant.
Stephen L. Huber, New Orleans, for Liberty Mut. Ins. Co., intervenor-appellee.
Before REDMANN, SCHOTT and MORIAL, JJ.
SCHOTT, Judge.
Plaintiff was awarded judgment against defendants, New Orleans Private Patrol Service, Inc., and its liability insurer, Aetna Casualty & Surety Company, for personal injuries sustained in an industrial accident on December 9, 1969, at the premises of Western Electric Company, Incorporated. The judgment included an award in favor of Liberty Mutual Insurance Company which, as the workmen's compensation insurer of plaintiff's employer, had intervened in the proceedings. From this judgment Private Patrol and Aetna have appealed. Western Electric, which was originally made defendant but which before trial successfully moved for a summary judgment in its favor, is not a party to this appeal but its liability insurer, Hartford Accident & Indemnity Company, has appealed from that portion of the judgment which dismissed its third-party demand against Private Patrol and Aetna for the costs incurred by Hartford in its defense to this litigation based upon the contract originally entered into between Western Electric and Private Patrol.
*352 Plaintiff, a painter, was employed by Becnel-Groetsch & Co., Inc., with which Western Electric had contracted for the furnishing of painting labor and materials at Western Electric's plant in New Orleans. At the time of the accident plaintiff was engaged in working on the outer side of one of six doors serving the loading dock at the Western Electric plant. These doors were overhead type doors whose opening and closing were electrically controlled from switches on the loading dock inside the building. Plaintiff was on a 10-foot ladder sanding and removing old paint from Door No. 2 with the ladder leaning against the door when it suddenly moved up to open, upsetting plaintiff's ladder causing him to fall to the ground and to suffer injuries.
Plaintiff had been working under the supervision of a Becnel-Groetsch foreman who had gone inside the building to secure an electric sanding machine for plaintiff's use. After having done so and having connected the electric wire to a plug on the inside of the building the foreman requested the guard on duty at the entrance of the warehouse to open Door No. 3 a bit so that the sander and cord could be brought through and made available to plaintiff who was working on Door No. 2. The guard then pressed a button to open Door No. 2, causing plaintiff's injury.
On the trial of the case there was conflicting evidence as to what the foreman said to the guard, whether the guard could, before opening the door, see through the door's windows plaintiff and the ladder on which he was working, whether he should have known of his presence and other issues on the question of whose negligence caused plaintiff's injury, but the trial judge held that the negligence of the guard was the sole cause of plaintiff's injury.
In this Court Private Patrol and Aetna do not specify error in the trial judge's finding of sole negligence on the part of the guard, but it is their contention that this guard, while a general employee of Private Patrol, was at the time of the accident a borrowed employee of Western Electric with the result that Private Patrol has no vicarious liability to plaintiff for the tort.
The contract between Western Electric and Private Patrol contains the following provisions addressed by the former to the latter:
". . . All persons furnished by you shall be considered solely your employees or agents and you shall be responsible for payment of all unemployment, social security and other payroll taxes, including contributions from them when required by law.
"You agree to indemnify and save us and our customers harmless from any claims or demands (including the costs, expenses and reasonable attorney's fees on account thereof) that may be made; (1) by anyone for injuries to persons or damage to property resulting from your acts or omissions or those of persons furnished by you; or (2) by persons furnished by you or your subcontractors under Workmen's Compensation or similar acts. You agree to defend us and our customers, at our request, against any such claim or demand. . . ."[1]
In his reasons for judgment, the trial judge stated that it was unnecessary for him to resolve the "very intricate and involved question of Law and Fact" as to whether the guard was a borrowed servant of Western Electric because the contract between the two companies was dispositive of the issue. He assigned no reason for rejecting the third-party demand of Hartford against Private Patrol and Aetna for Hartford's attorney's fees and costs of defendant against plaintiff's suit.
*353 Accordingly, there are three major questions to be answered on this appeal. First, does the contract between the two companies either (a) prevent the guard from becoming Western Electric's borrowed servant for whose tort Private Patrol would not be responsible, or (b) make Private Patrol liable regardless of whether the guard was a borrowed servant of Western Electric? Second, (if the contract does not have either such effect) was the guard a borrowed servant of Western Electric at the time of his tort, and, as a corollary to that question, could the guard have been functioning in a dual capacity as an employee of both companies at the time he committed the tort? Third, is Hartford entitled to recover its legal fees and costs of defense on the basis of the contract between its insured, Western Electric and Private Patrol?
Does the contract between the two companies either (a) prevent the guard from becoming Western Electric's borrowed servant for whose tort Private Control would not be responsible, or (b) make Private Patrol liable regardless of whether the guard was a borrowed servant of Western Electric?
Perhaps the easy answer to this question is found in Truitt v. B & G Crane Service, 165 So.2d 874 (La.App. 4th Cir. 1964). In that case the indemnity provision of a contract between the general contractor and the lessor of a crane did not specify that the crane operator would be considered the lessor's employee as in the instant case. It was solely an indemnity provision similar to the second part of our contractual language quoted above. But in that case, while observing that the language of the indemnity clause indicated that the parties to the contract at least considered the negligent employee to be the employee of the crane service, this Court in dicta said the following:
"We think these indemnity clauses in the agreement merely restate the obligation which the law would perhaps require the B & G Crane Service, Inc., to fulfill even in the absence of such stipulations, and have no effect with regard to the status of the crane operator as a borrowed employee while working on the construction job carried on by the general contractor." (Emphasis supplied)
Clearly, the contract between Western Electric and Private Patrol is the law between those parties and they are bound as between themselves by their agreement that the guard will be considered the employee of Private Patrol at all times during the performance of his duties, but by contract these parties cannot fix the status of that guard with respect to rights belonging to and obligations owed by third parties who are not in any way parties to the contract. For instance, the owner and driver of an automobile may enter into a contract which fixes ultimate responsibility as between themselves but they cannot affect the legal rights of a third party who may suffer damage from the operation of the vehicle. The owner of a building and a tenant storekeeper may enter into a contract for ultimate responsibility to business invitees of the parties to the agreement but they cannot deprive such a business invitee of any legal right he may have to proceed against either of the parties to the contract. The problem is analogous to the one before the Supreme Court in Klein v. Young, 163 La. 59, 111 So. 495, where the Supreme Court was confronted with the effect of a lease contract between landlord and tenant on the right of a third party to recover damages sustained when defective stairs collapsed. The Court concluded that the owner of a building could not avoid the obligation created by law [prior to Act 174 of 1932 enacting LSA-R.S. 9:3221] in favor of the injured plaintiff because of a contract made with his tenant. If company A, financially strong, contracted with company B, hopelessly insolvent, and they agreed that B's employees would at all times be considered B's employees, and if an employee of B, while a true borrowed servant of A, negligently injured a plaintiff, *354 it could hardly be said that plaintiff's right to proceed against A was precluded because of the contract between A and B.
We conclude that, irrespective of the parties' contract, the guard in the instant case may have become a borrowed servant or employee pro hac vice of Western Electric so that plaintiff would be ordinarily relegated to bringing suit against Western Electric on the basis of its vicarious liability for the tort of its employee. Likewise the contract does not make Private Patrol liable to plaintiff regardless of whether the guard became a borrowed servant of Western Electric; the contract merely indemnifies Western Electric against liability for the guard's tort.
Was the guard a borrowed servant of Western Electric at the time of his tort, and, as a corollary to that question, could the guard have been functioning in a dual capacity as an employee of both companies at the time he committed the tort?
Under the contract between Private Patrol and Western Electric, Private Patrol agreed to provide guards at a stipulated hourly rate, and Western Electric prepared and furnished to Private Patrol a set of regulations on which the guard in question was instructed preparatory to his assuming his duties at Western Electric's plant. He reported each morning to the Western Electric building and took up his post at the entrance to the warehouse located adjacent to the well where trucks would enter through the doors leading to the loading dock. From the time he arrived until the end of his working day his duties were spelled out in detail in Western Electric's security regulation and he was subject to orders from various Western Electric supervisors. When he reported for duty he called Private Patrol so as to advise it that he was on duty and he wore the uniform provided to him by Private Patrol and containing its identifying insignia. While Western Electric's written regulations did not include the operation of the doors to the loading dock he had on occasion prior to the accident operated these doors at the request of Western Electric's supervisors. Clearly, control over him at all times and at the time of the accident, which is the subject of this case, was exercised by Western Electric and to no extent by Private Patrol. His salary was paid by Private Patrol and not by Western Electric.
The landmark case of Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137, provides the guidelines for our answer to this question, as follows:
"It is a well settled principle of law that the master is liable for the torts of his servant committed in the scope and course of his employment, but it is often difficult where two possible masters are involved to determine which is liable for the tort, and to determine such liability we must look to the doctrine of the borrowed servant or employee pro hac vice. In determining liability under this doctrine in some cases the courts have imposed liability on the person in whose business the employee was engaged at the time the tort was committed. In others the test has been the right of control over the servant at the time the tort was committed. It has been pointed out that in applying the latter test it is often difficult to decide just what fact or facts constitute control. Mere division of control does not, in itself, raise the presumption of surrender of control, but there is a presumption that the general employer is liable, and it rests upon him to show that, as to the particular work in question, the servant has been lent and is performing only the borrower's work, and that he was not the defendant's servant at all. It has been said that even the control test is not an infallible one, and that the elements of each case must be taken into consideration. Where, however, it is clear that control by the defendant was coupled with performance for the defendant and in the defendant's business, the result is certain."
*355 In that case, the Supreme Court held that the foreman of a welding crew whose negligence caused injury to the plaintiff was not a borrowed servant of the drilling contractor for whom welding services were being performed pursuant to a contract between the drilling contractor and the welding company of which the tort feasor was the general employee. The Court was satisfied that the negligent employee was actually engaged in the business of the general employer and that control over the employee was never vested in the allegedly borrowing employer. Working with the same principles, the Court in B & G Crane Service v. Thomas W. Hooley & Sons, 227 La. 677, 80 So.2d 369, concluded that a negligent employee of a crane lessor became the borrowed servant of a contractor on the facts of that case. The Court said:
"Applying the tests laid down in these decisions, and particularly the test upon which all eventually turn, i. e., who controls the servant in the named employment, we have no hesitancy in holding that the crane operator in the instant case was the servant of the defendant, and that the partnership was, therefore, liable for any and all negligence that might have been attributable to such operator."
Although in the application of these principles the courts have concluded in some instances that an employee did not become a borrowed servant under certain circumstances, Universal Engineers & Builders, Inc. v. Lafayette Steel Erector Corporation, 235 So.2d 612 (La.App. 3rd Cir. 1970), Kezerle v. Hardware Mutual Casualty Co., 198 So.2d 119 (La.App. 3rd Cir. 1967), the courts have concluded that the borrowed servant relationship did occur in Brown v. B & G Crane Service, 194 So.2d 746 (La.App. 4th Cir. 1966), Young v. Hearin Tanklines, Inc., 176 So.2d 790 (La.App. 3rd Cir. 1965), Truitt v. B & G Crane Service, supra, and McCutchen v. Fruge, 132 So.2d 917 (La.App. 3rd Cir. 1961).
A summary of the facts of each one of these cases will add nothing to this opinion since the principles have remained constant throughout. The facts of the instant case show that the guard was performing the business of Western Electric at the time of his negligent act. In Gant v. Jackson Brewing Company, 112 So.2d 767 (La. App. 4th Cir. 1959), this Court held that a guard assigned to the defendant was its borrowed servant under circumstances much the same as existed between Private Patrol and Western Electric in the instant case. When the question is analyzed it seems clear that the business of Private Patrol in this case was not to guard Western Electric's building but rather to supply a guard to Western Electric which utilized the guard in the implementation of its own security. Certainly the security of the Western Electric Building and the utilization of guards in that connection is the business of Western Electric and not the business of Private Patrol. On the question of control over the guard, the facts of this case show that when the guard was on duty at Western Electric he was wholly within the control and under the supervision of Western Electric's supervisors. His opening of the warehouse door was incident to his duties under the supervision and control of Western Electric, and there is nothing to support the proposition that he opened that door pursuant to instructions of Private Patrol.
Plaintiff has advanced the proposition that the guard in the instant case was in a dual capacity as an employee of both companies, but we find no case to support such a proposition. All of the cited cases indicate at a given time the employee is functioning as the servant of one or the other but not both employers. There is a discussion in Brown v. B & G Crane Service, Inc., supra, in which this Court raises the question as to whether the operator of the crane on a construction project could be engaged both in the work of the owner of the crane as well as the general contractor, but in that case the *356 Court resolved that in the application of the test as to who has control over the employee he was necessarily a borrowed servant of the contractor at the time of the negligent act. We have concluded that both under the "control" test as well as the "whose business" test the guard in the instant case was a borrowed servant or employee pro hac vice of Western Electric at the time of his negligent act which would make Western Electric and not Private Patrol vicariously liable to plaintiff for the guard's tort.[2]
Is Hartford entitled to recover its legal fees and costs of defense on the basis of the contract between its insured, Western Electric and Private Patrol?
As already stated, the contract between Private Patrol and Western Electric is the law as between those parties and the indemnification clause is clear and unequivocal. Western Electric is not itself claiming attorney's fees and costs for defending, but Hartford, as its liability insurer, is doing so. While it is entitled to some recovery, it is not entitled to the full amount it seeks.
Under its policy of insurance, Hartford insured Western Electric and its employees. When this suit against Western Electric was dismissed by summary judgment, Hartford remained a party as insurer of Western Electric's employees. But the language of the indemnity agreement benefits only Western Electric and its "customers." Thus, employees and their insurers are not entitled to indemnity or defense and Hartford's claim is limited to those costs and attorney's fees incurred until the time the suit against Western Electric was dismissed.
Hartford has requested that this Court reverse the trial court's dismissal of its third-party demand against Private Patrol and Aetna and remand the case to the District Court for determination as to the amount to be allowed for costs and reasonable attorney's fees incurred as a result of Private Patrol's breach of the indemnity agreement. Since we are unable from the record to assess the amount due Hartford it is in order that we remand the case for that purpose alone.
Accordingly, the judgment appealed from is reversed and there is judgment in favor of New Orleans Private Patrol Service, Inc. and Aetna Casualty & Surety Company, and against Deland R. Kirkland, dismissing his suit at his cost; there is judgment in favor of New Orleans Private Patrol Service, Inc. and Aetna Casualty & Surety Company, dismissing the intervention of Liberty Mutual Insurance Company at its cost; and there is judgment in favor of Hartford Accident & Indemnity Company and against New Orleans Private Patrol Service, Inc. and Aetna Casualty & Surety Company on the third-party demand for attorney's fees and costs, but only for the defense of Western Electric itself until the time the suit against it was dismissed by summary judgment. The case is remanded to the District Court for the sole purpose of admitting evidence to show the amount to which Hartford Accident & Indemnity Company is entitled under its third-party demand.
Reversed and remanded.
NOTES
[1] The contract further notified Private Patrol that the guards "shall at all times be recognized as your employees and under your control and supervision. However, you, your agents, and employees shall, in the performance of services hereunder, comply with the written or verbal instructions received solely from our Representative or Delegate."
[2] Western Electric is plaintiff's statutory employer, R.S. 23:1061, against which the exclusive remedy is Workmen's Compensation, R.S. 23:1032. Since Western Electric is not liable to plaintiff in tort, Private Patrol owes it no indemnity for tort liability.