### EDENFIELD et al. v. WHELESS et al. *
No. 4711.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1934.

Irion & Switzer and Chas. B. Emery, all of Shreveport, for appellants.

Foster, Hall, Barret & Smith, of Shreveport, for appellees.

DREW, Judge.

Plaintiffs sue for damages alleged to have been caused by an automobile accident in the city of Shreveport on July 25, 1932. The damages prayed for are as follows:

For Dempsey S. Edenfield, for physicians, surgeons, hospital, nurses, and burial expenses of his infant son, $938.89; for Patsy S. Edenfield, for injuries to nervous system, $1,500; for injuries to kidney, $1,500; for causing premature delivery of child and Cæsarean operation, $3,000; for physical pain and suffering, $2,000; for being disabled from ever again bearing a child, $4,000; for Dempsey S. and Patsy S. Edenfield, jointly, for death of infant son, $10,000; for loss of society and affection and support of son, $5,000.

The defendants are N. Hobson Wheless and his insurer. The accident was caused by a car, driven by the sixteen year son of N. Hobson Wheless, who was living with his father, colliding with the back end of a car, driven by Mrs. Leopold, in which Mrs. Patsy S. Edenfield was sitting. The place of the accident was in front of the Strand Theatre on the east side of Louisiana avenue, in Shreveport, La.

The acts of negligence alleged against young Wheless are clearly proved and we

have to go no further than his testimony to find the proof. Mrs. Edenfield was on the front seat of a car being operated by Mrs. Leopold. They had come from the south on Louisiana avenue with the intention of attending a show at the Strand Theatre. On arriving there, all parking space was taken; but one person was in the act of driving out. Mrs. Leopold stopped her car abreast of another car parked on the east side of the street and was waiting for the parked car to get out in order that she might park. It is admitted that she had been so standing for two minutes when her car was struck from the rear by the car driven by young Wheless. Wheless and a companion, with Wheless driving, were likewise coming from the south on Louisiana avenue with the intention of visiting a show, but had not decided which show they would attend. When they arrived nearly opposite the Strand Theatre, they both looked to their right to see what show was playing at the Strand, thereby taking their eyes off the street ahead of them, and when Wheless again looked to the street, he was too close to the Leopold car to stop and jammed into the back of it.

Louisiana avenue is a wide street and well lighted; the Leopold car had its taillights on and there was no traffic moving either way on the street at the time. Wheless could have and should have seen the Leopold car standing still several hundred feet before he struck it, and if he had been observing as he should have been, he had plenty of room to turn to the left and miss the Leopold car. He was grossly negligent in taking his eyes off the street as he did and continue to travel at a rate of speed he says was not more than twenty miles per hour. His negligence was the proximate cause of the accident, and, furthermore, he had the last clear chance to avoid the accident. Defendant pleaded contributory negligence, based on the fact that the Leopold car was double-parked, in violation of a city ordinance. We do not think there was any negligence on her part under the circumstances; but if there was, it was not the proximate cause of the accident.

We find no difficulty in agreeing with the lower court as to the liability of defendants, for whatever damage was caused by the accident.

Mrs. Edenfield, who was at the time approximately four and one-half months pregnant, was sitting on the front seat with her left leg crossed over her right and her purse held against the lower right side of her abdomen. The jar of the car caused her to be suddenly thrown forward and the purse pulled into her abdomen on the lower right side; she was not thrown out of her seat. She immediately complained of her right side, became excited and highly nervous. She was carried to the sanitarium, where Dr.

Dickson examined her and instructed her to go home and go to bed, which she did, but got up the next morning and attended a bridge party that afternoon. Soon after the bridge party, she became highly nervous and phoned for Dr. Stamper, who requested her to come to his office, which she did. He gave her a hypodermic and sent her home to go to bed. She had a hard chill, fever to 104 degrees, and the next day her kidney began hurting. She was taken to the sanitarium on Thursday, July 28th, where she remained a greater part of the time until September 28th, when the labor pains came on and a Caesarean operation was performed, the child taken, but it lived only about four and one-half hours. The child weighed three and one-half pounds, was anemic, and was two and one-half months premature. During the operation her tubes were tied so that she could not again become pregnant.

Mrs. Edenfield and her husband contend that her condition, the loss of the child, etc., was caused by the injury which she received in the accident. This is denied by defendants.

Mrs. Edenfield was a woman 25 years of age and had been married three or four years. Her husband testified that she had been bothered with kidney trouble ever since he had known her. After her marriage she was treated for pyelitis, a disease caused by and causing pus in the pelvis of the kidney. In the year 1930, she became pregnant, but due to her pyelitic condition, her physician in North Carolina performed an abortion. She later moved to Shreveport, where she continued to suffer with pyelitis and was under treatment from Dr. Stamper who, in August, 1930, removed her left kidney, which was giving her the trouble at that time; and he described it as an infantile kidney about one and one-half inches in length and one-half inch thick. The attacks with her kidneys would always come on suddenly, with severe soreness in her side and a bearing down feeling. Her temperature would mount quickly to 103 or 104 degrees. She said she could tell the day before they were coming on and would call Dr. Stamper, a specialist in that line. Following the removal of the left kidney and under the regular treatment of Dr. Stamper, she improved, and was informed by Dr. Stamper that she could give birth to a child. She continued under the observation and treatment of Dr. Stamper, and after the removal of the left kidney, she had a recurrence of her former trouble with the right kidney, and up until a short time before she became pregnant would have an attack about every two months, and Dr. Stamper would treat her by the use of a catheter. She had not had an attack since becoming pregnant, although she would visit Dr. Stamper's office weekly for an examination until about six weeks or two months after she became pregnant—that is, until it

was definitely known that she was pregnant —when Dr. Stamper turned her case over to Dr. Dickson, who treated her from then on. Dr. Stamper had not seen her for several weeks before the accident.

There can be no doubt that the trouble Mrs. Edenfield had after the accident was the same that she had had four or five months before the accident, and had for three years prior thereto. The cause may be different. We take it from the testimony that the acute attack after the accident was due to a stricture of the ureter, caused by the formation of scar tissue, which can be caused by trauma or by infection. We think it positive that there was enough infection due or caused by pyelitis to have caused it. It seems clear that Mrs. Edenfield recognized her trouble to be the same, for she described her feeling and pain the same as it was when she had had acute attacks prior to the accident, and she knew the day before the acute attacks, the same as she had prior. She called Dr. Stamper, as she formerly had, and did not call Dr. Dickson, who was at that time attending her for pregnancy. Her condition is certain, but the cause of it is very uncertain. Whether her condition was a natural recurrence of the former trouble or a progressive stage of it, or whether the recurrence was caused by the injury received in the accident, are the questions before us now.

When she was examined by Dr. Dickson after the accident, he found one or two red places on the lower right side of her abdomen which disappeared in a few days, and in his treatment of her from then until after the operation, he at no time took into account or consideration any injury received in the accident. He was asked if a blow could possibly have caused the trouble suffered by Mrs. Edenfield, and he replied, "Yes, possibly." He was then asked if it was a probability in this case, and replied: "Well, I do not know. I did not take that into consideration. I did not make a cystoscopic examination."

 We have studied with care the testimony of Dr. Stamper, who treated Mrs. Edenfield for two and one-half years, to find where he gives as his opinion that the trouble with Mrs. Edenfield after the accident was due to the injuries received in the accident, and we have failed to find it. Each of these reputable physicians and surgeons treated her before and after the accident. Each performed an operation on her, and no doubt would be inclined to be as favorable to her cause as possible, and if they are not willing to venture an opinion that the slight injury received by her was the cause of her trouble thereafter, we think the court would have to go a long way to do so. No doubt it is possible that the injury could have caused the trouble, but we cannot decide cases on possi-

bilities alone. The lower court held that the condition of Mrs. Edenfield after the accident was not caused by the accident and slight injury received there, and we find no manifest error in its holding. It rejected the claim of Mr. Edenfield and allowed to Mrs. Edenfield damages in the sum of $100, for immediate shock on the date of the accident, and rejected all other demands.

There is no manifest error in the judgment, and it is affirmed; cost of appeal to be paid by plaintiffs, appellants.

MILLS, J., recused.