**AUGUSTINE v. BLASINI.***

No. 16752.

Court of Appeal of Louisiana. Orleans.

Nov. 2, 1937.

*Rehearing denied Nov. 15, 1937.

E. Howard McCaleb and Robert Guerard Hughes, both of New Orleans, for appellant.

Gill & Simon and Warren M. Simon, all of New Orleans, for appellee.

JANVIER, Judge.

Mildred Augustine, wife of Herman Snaer, while sweeping the floor of one of the rooms in the premises leased by her husband from Rose Blasini, received injuries as the result of being struck on the head, neck, shoulders, and back by plaster and débris which fell from the ceiling. She seeks recovery from the said owner of the premises, alleging that she sustained severe contusions and brush burns, and that she, being pregnant at the time, suffered a miscarriage.

Defendant, by general denial, put at issue all the essential averments of the petition, but on the trial admitted ownership of the premises and the lease thereof to petitioner's husband.

There was judgment for plaintiff for $800, and defendant has appealed.

That plaster fell from the ceiling upon plaintiff, and that she was in no way at fault is shown, and the only seriously contested issue is that which results from defendant's denial of the allegations that plaintiff sustained a miscarriage, and defendant's alternative defense that, if she did, it was not caused by the falling of

the plaster. There is no proof contradictory of the evidence of plaintiff that the miscarriage, or, as the physicians refer to it, the abortion, occurred, and therefore, meager as that evidence is, we cannot reach any conclusion other than that such a misfortune did take place.

The trial judge evidently had difficulty in finding that there was causal connection between the falling of the plaster and the abortion, because, in his reasons for judgment, appears the following: "As to the cause of the abortion, that was purely speculative."

He expressed the further opinion that, since the abortion occurred shortly after the external injuries were received, it must have resulted from those injuries. However, it appears that, though the plaster fell on the morning of January 2, 1936, the abortion did not occur until more than two full days later, and there is no satisfactory evidence that during that time plaintiff suffered from internal injuries, pains, or hemorrhages, and it is clearly shown that she did not summon her own physician until the day after that on which she says the abortion took place. It is shown by competent medical expert testimony that abortions or miscarriages result from a large number of different causes, including disease, such as syphilis, sexual intercourse while pregnant, and others too numerous to mention, and that external trauma is often sustained without such a result. Plaintiff's physician concedes that there are numerous causes other than trauma, and though expressing the opinion that in this case there was causal connection between the trauma and the abortion, he could not actually state the cause. He said: "As to the cause I don't know." Plaintiff states that she had previously borne three children, two of whom had died without any apparent cause and after living only a very short time, and that the third had been stillborn. The expert evidence shows that such occurrences usually indicate a diseased condition, and that miscarriages and abortions are frequently sustained by women suffering from social diseases.

It is also shown that a well-recognized cause of abortion is sexual intercourse during pregnancy, and plaintiff herself testifies that within the two months of pregnancy which preceded the abortion she and her husband had had such intercourse "very many times." It appears, then, that there were several other possible causes for this abortion.

But counsel for plaintiff cites the case of Joiner et al. v. Texas & Pac. Ry. Co., 128 La. 1050, 55 So. 670, 671, in which the Supreme Court said: "The miscarriage had a cause; and, there being one so obvious, what wisdom is there in doubting and searching for any other?"

In that case, however, from the moment of the accident the plaintiff "had begun immediately after the shock to feel pains in the lower abdominal region, and had continued to feel them on her way home" During that same night she had sustained "a slight menstrual loss," and the next morning she went to her physician and thereafter continued to have hemorrhages until the physician finally decided that she had sustained a miscarriage. It is true that the final diagnosis was not made until some 30 days after the accident, but during all of that time the court states that "she continued to suffer and to lose." The immediate pain and almost immediate "menstrual loss" evidenced a causal connection between the accident and the subsequent miscarriage. Here there were no such connecting links.

In White v. Juge, 176 La. 1045, 147 So. 72, and in Thomson v. Cooke, 147 La. 922, 86 So. 332, both relied upon by counsel for plaintiff, there was apparently no controversy as to the cause of the miscarriage.

In Lakios v. New Orleans, T. & M. Ry. Co. (La.App.) 147 So. 525, 528, the court found that "the fact that Mrs. Lakios did suffer a miscarriage several hours after her return to De Quincy gives strong support to her and her husband's theory as to its cause," but the court also found that, where there are other possible causes, it will not do to accept the accident as the true cause, unless there are connecting links between the accident and the ultimate miscarriage, and there the court rejected the contention that there was causal connection between the two.

In Edenfield v. Wheeless (La.App.) 151 So. 659, is found a case in which the evidence of the physicians bears considerable similarity to that of plaintiff's physician here, for there the doctors said that the blow could "possibly" have been the cause, yet the court found that there was not sufficient proof of the cause.

In Jones v. Pierce (La. App.) 162 So. 214, 216, we considered the suggestion that where a pregnant woman is in an accident

and later there is a miscarriage or abortion, there is something "akin to a presumption that the accident was the cause of the subsequent misfortune." We refused to so conclude and, though recognizing that in two cases, Joiner v. Texas & Pac. Ry. Co., supra, and Stewart v. Arkansas Sou. Ry. Co., 112 La. 764, 36 So. 676, 677, without positive proof, the court had held the miscarriages to have been caused by accident, in each of them there were, immediately following the trauma, "internal manifestations of unfortunate events to come." In the Joiner Case, as we have already set forth, the pain was "immediate." In the Stewart Case, "the shock suffered was sudden and violent, and, immediately after, the pain complained of was felt."

In Klein v. Medical Bldg. Realty Co., Inc., 147 So. 122, 126, in which the issue was whether a certain physical condition had been caused by accident, we said: "It is not sufficient for the plaintiff to make his case probable, but he must prove it with reasonable certainty."

There is much about the evidence which might justify a "guess" that the abortion resulted from the accident. On the other hand, to so conclude would require that we guess, and that we base that guess on probabilities. We cannot view the evidence as showing a substantially preponderating probability in favor of the accident as the cause. We agree with our brother below that the cause is speculative, and therefore conclude that we may not speculate, since the cause should be shown by a preponderance of the evidence.

The other injuries sustained by plaintiff were not serious. Dr. Weilbaecher describes her external injury as "a slight hickey * * * on the head." He also states that she sustained "small few scratches on the shoulders. No deep abrasions of any kind; no cuts or anything of that kind. * * *" Her own physician, Dr. Maurer, states that he visited her fourteen times; his last visit being on the twenty-first day after the accident. He makes no reference to external injuries, confining his testimony to the abortion. It is quite evident that during most of this period of disability she suffered as the result of the abortion and not from the injuries caused by the fall of the plaster. It is difficult indeed to determine just what allowance should be made for those injuries, but we feel that $200 should be ample remuneration.

The charge made by plaintiff's physician has been withdrawn by her counsel; he conceding that it should be recovered, if at all, in a suit by plaintiff's husband as head and master of the community. See Shield v. F. Johnson & Son Co., Ltd., 132 La. 773, 776, 61 So. 787, 47 L.R.A. (N.S.) 1080.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by the reduction thereof to $200, and that, as thus amended, it be affirmed; appellant to pay costs of appeal.

Amended and affirmed.

McCALEB, J., recused.

