The opinion of the court was delivered by
Watkins, J.
Plaintiff seeks to recover ten thousand dollars damages of the defendant, as owner of the house at the corner of Julia and St. Charles streets in the city of New Orleans, it being at the time occupied as a residence, by one W. H. Burgess, as his tenant, under the following circumstances as related in his petition, viz.:
“On the 16th of November, 1894, Burgess entertained a party of friends at his home. They had come as a ‘ surprise party’ and were welcomed by Burgess as guests. Among them was the daughter of plaintiff, and tshe was made welcome by the host and his wife. A little after 1 o’clock, Miss Virgie McConnell was standing on the veranda, or gallery, that surrounded the dwelling, and on which a number of doors opened. She had stepped upon the gallery for the purpose of enjoying the fresh air, as the evening was a warm one, while the other young ladies were putting on their hats preparatory to leaving. While she was standing on this gallery, which was a structure extending along both the Julia and St. Charles street sides of the house, being about twelve feet wide, with a railing encircling it, the fire bells rang and about a dozen of the guests came out to watch the fire engine pass. The engine house was nearly opposite, and they viewed the preparations of the firemen, and the departure of the engine out Julia street toward the woods.
“The engine had scarcely crossed St. Charles street before the section of the gallery upon which Miss McConnell, with about seven or eight other guests, was standing, suddenly gave way and fell, and precipitated her and others to the hard flag pavement of the sidewalk, a distance of about thirteen feet. Two others fell on top of her. Her right leg was broken above the knee, and she was bruised all over the body. She remained six weeks in bed in the Charity Hospital, suffering excruciating pains and agony; and she could not walk without a crutch for months after the accident. After healing, her injured leg was found to be shorter than the uninjured one. Dr. Schmittle, who had not measured the extent of the shortening, *1435 thought it was between one-quarter to one-half inch; Dr. E. J. Graner, who made a critical examination, testified that it was about one-half inch. Both physicians concur in pronouncing the injury permanent, and that Miss MeOonnell will be a cripple for life. She will always limp.
The cause of the falling of the gallery was fully proved. It was'rotten to such an extent that no repairs could have rendered it safe.. The inspector of public buildings of the city of New Orleans, Mr.. Beeler, made an examination of that portion of the structure that» did not give way, and ¡ordered it torn down, as dangerous to human» life.”
Admitting his ownership of the premises in question and the lease' of Burgess, the defendant, for answer, avers that it was rented for the uses and purposes of a residence, and was in thoroughly good» condition at the time the accident happened; and that it was amply safe for its usual, ordinary and contemplated purposes. That there-was no defect in said gallery which was apparent to an observer and that he had effected all the repairs which were necessary a short time before the accident, and if any further repairs were desired it-was the duty of the tenant to have notified him to make same, and-in default of his so doing to have made same, and deducted the cost-from the amount of rent due or to become due.
He denies that plaintiff’s daughter went on the premises with the knowledge or consent of himself, or even with the request or at the invitation of his tenant. He avers that his tenant possessed and used the gallery daily, and had same been in the dangerous condition it is represented to have been, it would have been the duty of the tenant to have warned the young people composing the surprise party-of the danger there was of crowding thereon, as they are admitted-, to have done. That the proximate cause of the accident and of the injury which was inflicted upon plaintiff’s daughter, was the sadden rushing of the dozen of young ladies out upon the gallery simultaneously, same not having underneath any proper and suitable support, as is usual when it is expected to be resorted to by an unusual, assembly of persons.
As matter of law, it was contended by the defendant’s counsel-that the precept of our Code, which provides that the owner of a-building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it (R. C. C. 2322), applies only to- *1436 passers-by upon the public highway, and to neighbors, and not to persons voluntarily entering upon private premises, and there suffering aú injury.
That a person who thus enters the premises of another, by the •permission of the tenant, is, with respect to the owner, a mere /licensee, and sustains a relation to him somewhat like that of a subtenant, and can acquire no greater rights than the principal lessee; ..and if he enters without permission of the lessee, he is a trespasser, •without any privity of contract with respect to the owner, through 4he medium of the lease.
That a tenant can not recover damages of the landlord by reason of his failure to make repairs, when the arrearages of rent are sufficient to enable the lessee to make them, in case of the lessor’s failure to make same after he has received due notification of the necessity of same being made; and he avers that at the time of the .happening of the accident the tenant was in arrears a sufficient ..amount to have defrayed the cost of the necessary repairs.
-On the trial there was judgment for twenty-five hundred dollars .-against the defendant, predicated upon the verdict of a jury, from which he has appealed; and in this court plaintiff has demanded 'that this allowance be increased to five thousand dollars.
The proof at the trial substantially conforms to the foregoing -statements pro et con.
It shows that shortly after he rented the premises to Burgess, the -defendant sent carpenters to the leas 3d premises, with instructions .to place it in good order, and that materials were ordered and delivered for that purpose, and used by the carpenters. That all the repairs necessary were voluntarily made by the defendant, and that no demand was subsequently made by the tenant for additional repairs; that at the time of the accident the tenant was in default in making payment of his rent, and was subsequently notified to vacate the leased premises on account of his non-payment of rent. That the gallery was not in a condition to stand this unusual strain is not denied, but on the contrary, was generally known among the guests, and that during the course of the evening that the accident happened the visitors were warned and admonished to desist from dancing, as the gallery would not stand the strain it would produce.
That notwithstanding that warning the guests rushed out on the .,gallery when the fire-bell rang, causing it to give way and fall *1437 beneath their accumulated weight, causing the injury complained of-to the plaintiff’s daughter.
Plaintiff’s counsel puts his clients’s right of recovery upon the following provision of our Code, viz.:
“ The owner of a building is answerable for the damage occasioned-by its ruin, when this is caused by neglect to repair it, or when it is-the result of a vice in its original construction.” Revised Civil Code, 2322.
And the further provision, viz.: .
“Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.’’’ R. C. C. 2316.
These provisions of the Code treat of offences and quasi-offences. toward the general public and they impose upon the owner ofi a building the general duty of keeping it in such a state of repair and-preservation that it will not occasion damage to any one. And in: case of his failure so to)do they declare that he is answerable in damages to one who shall suffer injury in consequence of his neglect,, imprudence or want of skill.
But counsel for the defendant contend that the article first cited-must be construed in connection with the provisions of Art. 670,. which are as follows, viz.:
“ Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers under the penalty of all losses and damages which may result from the neglect of the owner in that respect.” (Our italics.)
These articles have been frequently construed by this court, but in no ease of which we are aware have they been applied to-a. case circumstanced as this case is.
They have been construed as applying to persons injured while-walking along the street. Howe vs. New Orleans, 12 An. 481; Barnes vs. Beirne, 38 An. 280; Tucker vs. Railroad Company, 42 An. 114.
And they have been applied to persons occupying an adjoining building, who have sustained- injuries by reason of another building falling against and demolishing it. Knoop vs. Alter, 47 An. 570 Steppe vs. Alter, 48 An. 363.
These are obvious arid necessary safeguards the law has provided for the citizens of towns and cities, to whom old and dilapidated, or- *1438 'badly designed and constructed buildings are a constant menace, «while attending to the ordinary and every-day concerns of life.
But it is not readily perceivable upon what principle of duty or -equity these precepts of the Code are to be extended to the accidental occupants of a house, having no contractual relations with either the proprietor or his tenant.
But, it must be observed, that the articles cited do not rest upon contractual relations, at all; but the liability of the owner arises ex delicto alone.
He is held liable because he is deemed guilty of a fault in not keeping his building in such a safe condition as it will not do any member of the public an injury. It is the thing which offends, and the owner -suffers the consequences of the offence. The imposition of the penalty results from the idea, that the faulty or defective building is an invasion of the security that municipal government guarantees to «.the citizen, or wayfarer in the public thoroughfare of the city.
The reason and spirit of this rule does not seem to apply to the person who seeks admission to the premises or who goes there upon the invitation of the owner or tenant, either on business or pleasure; for, in such case, the. ordinary rules of trespass or contract would .apply. Visitors are, in a certain sense, members of the family.
Looking at the evidence as we have related it, it is manifest, that «if the members of the surprise party had passed along the banquette underneath the gallery of defendant’s house, and had not entered the building at all, it would not have fallen, and plaintiff’s daughter would have suffered no injury; consequently we must look to som -different principle of law on which, if at all, the defendant can be held bound.
In our opinion the guests of the tenanc have no claim against the landlord for damages they have sustained while on the premises.
The guests of the tenant are not guests of the landlord. During the term of the lease the owner may be said to have, for a consideration, parted with his exercise of the right of ownership. If the tenant be neglectful of the safety of his guests they have their recourse against him personally and not against the owner of the building. In such case it is the duty of care the occupant owes his guest and not the duty the owner of the building owes to the public, .that controls the recourse of an injured party.
If on plaintiff’s theory, a person, upon invitation of a tenant, *1439 should enter any old and dilapidated building and suffer injury, and the owner would be responsible, the consequences would be disastrous to landlords; for who could afford to lease property under the circumstances, and take the risk of suffering thousands of dollars in damages for the carelessness or imprudence of tenants on their failure to make, as in instant ease, some trifling repairs, the cost of which he could have easily reimbursed himself from the arrearages of rent in his hands.
We are fully convinced that the article of the Code on which plaintiff’s counsel rely was never intended to govern this kind of a case; and this becomes more evident when we take into consideration the article of the Code which counsel for the defendant has cited as being in pari materia.
Counsel has also referred us to several pertinent common law authorities, but we prefer to rest our decision upon the principles of our own statutes.
But if, on the other hand, the members of the surprise party were uninvited, and to be treated and considered as trespassers, or mere licensees, the plaintiff’s only recourse must be against the person by whose tacit permission they were on the premises. O’Connor vs. Railroad Co., 44 An. 339; Snyder vs. Railroad Co., 42 An. 302.
But, in any event, the evidence satisfies our minds that the defendant, as owner of the building, has exonerated himself from liability by making all the repairs which he supposed to have been necessary to the safety and security of the building; and if any fault there was on his part, the tenant and his guests contributed, in some degree, to the accident, by not desisting from rushing out upon the gallery as they did after having been warned against the danger of dancing on it.
A case for damages is not made out.
It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the plaintiff’s demands be rejected at his costs in both courts.