O'NIELL, C. J. Appellant was convicted of the offense of having intoxicating liquor in his possession for beverage purposes. It was the whisky that we referred to in the case No. 26920, 102 So. 810,[1] in which appellant was accused of manufacturing the liquor. The cases are otherwise alike and were decided on the same evidence.

For the reasons given in the case No. 26920, 102 So. 810,[1] decided today, the conviction in this case is annulled, and the case is ordered remanded for a new trial.

LAND and THOMPSON, JJ., concur in decree.

---

(102 So. 813)

No. 24828.

**SHELTON v. MASUR et al.**

(Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant** ⟠168(1)—**That tenant might have made repairs and deducted cost from rent held no defense to action for injuries caused by defects.**

In action by tenant for personal injuries caused by breaking down of steps, that tenant might have repaired the steps and deducted cost thereof from rent *held* no defense, in view of Civ. Code arts. 670, 2322, and 2695.

2. **Damages** ⟠131(3) — **$300 damages for slight injury to ankle and bruise on arm held adequate.**

For slight injury to ankle, causing pain and limp for few days only, and bruise only on arm which developed into abscess, damages of $300 *held* to be adequate compensation.

Appeal from Sixth Judicial District Court, Parish of Ouachita; F. M. Odom, Judge.

Action by Mrs. R. P. Shelton against Herman and Sigmund Masur. Judgment for plaintiff, and defendants appeal. Amount of judgment reduced, and as amended affirmed.

Adolph Wolff, of Monroe, for appellants.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee.

---

[1] *Ante*, p. 614.

O'NIELL, C. J. This is a suit for damages for personal injuries. The suit was for $10,050; and the judgment in plaintiff's favor is for $500, with legal interest from judicial demand. The defendants have appealed, and the plaintiff has answered asking that the judgment be increased to the amount sued for.

The injuries were caused by the breaking down of the back steps of the plaintiff's residence, which her husband leased from the defendants. The timbers under the steps were rotten and broke under plaintiff's weight. She fell to the ground, and hurt her left arm and ankle.

[1] The argument in defense of the suit is that the plaintiff or her husband might have had the steps repaired at the expense of the lessors, deducting the cost from the payments of rent. In support of the argument, appellants' counsel cites Lewis v. Pepin, 33 La. Ann. 1422, and Brodtman v. Finerty, 116 La. 1103, 41 So. 329. The answer to the argument is that plaintiff and her husband were not aware of the bad condition of the steps and were not obliged to know the condition or to repair the steps. The two decisions cited by appellants' counsel were explained in the recent case of Boutte v. New Orleans Terminal Co., 139 La. 951, 72 So. 515, viz.:

"In Lewis v. Pepin, 33 La. Ann. 1422, the lessee's demand for damages on account of a leaky roof was denied because the evidence showed conclusively that, in using the roof as a place for hanging out laundered clothes, the employés of the lessee had stopped up the gutters with old clothes, and had injured the roof by walking on it, and had caused it to leak. The doctrine of all of the foregoing cases, that the lessee could not recover damages which he knew were going on and could have prevented, was affirmed, with a significant expression that, however questionable that construction of article 2694 of the Civil Code might be as an original proposition, it was then too well established to be disturbed.

"Although the foregoing cases were cited in support of the decision in Brodtman v. Finerty, 116 La. 1103, 41 So. 329, they were not at all appropriate. In this last case, the lessee sued

the lessor for damages for an injury inflicted on the hand of the lessee's wife by the falling of a shutter or blind while she was attempting to close it. The complaint was that the lessor had neglected to have a new hinge put on the blind or shutter on the leased building, after he had been notified that it was broken. It is plain that the lessee had no right or cause of action in that case, because the Civil Code expressly provides that it was his duty, and not the duty of the lessor, to make such repairs as were necessary to the windows, shutters, and hinges of the leased premises. Article 2693 of the Civil Code provides that the lessor—

"'Ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make as hereafter directed.'

"And the next following article declares that, if the lessor does not make the necessary repairs required in the preceding article, the lessee may call on him to make them; and, if he then refuses or neglects to make them, the lessee may (not must) himself cause them to be made, and deduct the cost from the rent due. Then follows the provision that the lessor guarantees the lessee against all vices or defects which may prevent the use of the premises, even though the lessor was not aware of the vices or defects when the lease was made, and even though the vices or defects may have arisen after the contract of lease was entered into, provided they were not caused by any fault of the lessee—

"'And, if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.'

"But, turning to the next section of the Code, treating of the obligations and rights of the lessee, we find, in article 2715, that:

"'The lessee is bound to cause all necessary repairs to be made which it is incumbent on lessees to make, unless the contrary hath been stipulated.'

"—and, among these, in the next following article, we find that:

"'The repairs which must be made at the expense of the tenant are those which, during the lease, it becomes necessary to make: * * * To windows, shutters, * * * locks and hinges. * * * *'

"It is true the article of the Code quoted above was not expressly referred to in the opinion in Brodtman v. Finerty, but it was observed that the repairing of a shutter or renewal of a hinge was a very ordinary repair, and was not one of the serious defects or vices against which the lessor had guaranteed the lessee, under the terms of article 2695 of the Civil Code. And it was said that, if the lessee's wife was to be considered a third person, not bound by the obligations of the lessee, she would, under the doctrine of McConnell v. Lemley, 48 La. Ann. 1423, 20 So. 887, 34 L. R. A. 609, 56 Am. St. Rep. 319, 'have to look to the lessee, and not to the lessor, for damages.' This latter expression, however, is not a correct doctrine, since the decision announcing it (McConnell v. Lemley and the companion case of Prechter v. Lemley, 48 La. Ann. 1439, 20 So. 1019) had already been, in effect, overruled by the decision in Schoppel v. Daly, 112 La. 212, 36 So. 322, and were again expressly overruled in Cristadoro v. Von Behren's Heirs, 119 La. 1028, 44 So. 852, 17 L. R. A. (N. S.) 1161."

The doctrine of the decision in Boutte v. New Orleans Terminal Co., as expressed in two paragraphs of the syllabus, is especially pertinent to the present case, viz.:

"The jurisprudence to the effect that a lessee cannot knowingly and intentionally permit an injury to occur from the need of repairs that he himself might make with the rent due the lessor, and thus impose upon the lessor a loss greater than the repairs would have cost, has no application to an unforeseen accident, such as the collapse of the leased building or of a part of it. * * *

"The lessee's right to make the necessary repairs, which primarily, the lessor should make, does not affect the guaranty imposed by article 2695 of the Civil Code upon the lessor, to protect the lessee from any vice or defect in the leased premises and to indemnify him for any loss resulting therefrom. Nor does the lessee's right to make the necessary repairs that the lessor has neglected to make diminish the obligation imposed by articles 670 and 2322 of the Civil Code upon all owners of buildings, to keep them in repair, under penalty of having to answer for any damages that result from their going to ruin, or from the fall of any part of the material composing them."

There are two later decisions as appropriate as the Boutte Case, viz.: Allain v. Frigola, 140 La. 982, 74 So. 404; and Breen v. Walters, 150 La. 578, 91 South. 50.

It was said in Allain v. Frigola, and repeated in Breen v. Walters:

"The owner is bound to know whether his building is safe for the purposes for which he rents it, or authorizes its use, or is rotten and unsafe, and is answerable, in damages, to those who, being lawfully therein, are injured by rea-

son of its defects, whether of original construction or caused by failure to make proper repairs."

[2] Fortunately, for all parties concerned in this case, the injuries suffered by the plaintiff were not serious. The injury to her ankle was very slight. It caused some pain and a limp, which lasted only a few days. The injury to her arm was only a bruise, which developed into an abscess. It had to be lanced, but the incision was not deep and did not leave a permanent injury or ugly scar. The doctor's bills for treating the injuries were only $29. The four doctors who testified in the case expressed opinions which, in our judgment, made the amount of damages allowed by the district court somewhat excessive. We have concluded that an allowance of $300, with the legal interest from judicial demand, will be full compensation for the injuries suffered.

The amount of the judgment appealed from is reduced from $500 to $300, and as thus amended the judgment is affirmed. Appellants are to pay the costs of the district court, and appellee is to pay the costs of appeal.