Mrs. Etta Lowe, grandmother of Jesse James, tenant of defendant, Home Owners' Loan Corporation, and residing with Mr. and Mrs. James in the leased premises, sustained personal injuries as the result of falling from the first floor porch to the sidewalk when the knob of the front door pulled away from the lock as she was closing the door. She charges that the lock and knob were defective prior to the commencement of the lease and that, in spite of the legal obligation placed upon the said owner by articles 670 and 2322 of our Civil Code and in spite of a written agreement on the part of the said owner to make the necessary repairs, they were not made, and, consequently, that the injuries resulted from the failure of the said corporation to maintain its property in good condition and from its failure to repair the defects, which, it is charged, caused the accident.
The Board of Administrators of the Charity Hospital of Louisiana at New Orleans intervened, claiming $101.50 as the amount due to the said hospital for the services rendered to the injured plaintiff, and claiming, also, legal interest and attorneys' fees.
Defendant admitted that the premises in question, No. 2410 North Rampart Street, were leased to plaintiff's grandson on May 20, 1939, but denied any negligence on its part and averred that, if either the lock or the knob was defective, it was the duty of the tenant, plaintiff's grandson, to make the repairs, and defendant also averred that, if there was any defect, plaintiff was well aware of it and was guilty of contributory negligence in pulling too hard upon the knob as she attempted to close the door. And defendant especially averred that in the written offer of lease which was made by the tenant, plaintiff's grandson, there appeared a stipulation reading as follows: "Tenants or occupants residing in or being on the within described premises do hereby accept responsibility for the condition of the said premises, insofar as the condition of said premises affect any and all liability of the Lessor, but it is specially understood that the Lessee hereby does not agree to bear the cost of maintenance and upkeep thereon."
There was judgment dismissing plaintiff's suit and she has appealed.
The record shows that on the 20th of May, 1939, Jesse James, plaintiff's grandson, agreed to lease the premises in question and that at that time certain repairs were in progress and others were needed. It was agreed that James should take *Page 364 
possession of the place on May 25th, which he did. On October 14, 1939, almost five months later, as plaintiff was leaving by the front door, she pulled very hard on the door knob in an effort to jam the door against the frame, and, as she did so, the knob pulled loose and she was precipitated across the porch and onto the sidewalk in front of the building. She sustained a dislocation of the head of the humerus and a "fracture of the greater tuberosity of humerus", which, according to the attending physician, is a fracture of the left arm near the shoulder. She was taken to Charity Hospital, where she remained for three days, and, after discharge from the hospital, she was required by the physician to return in one week, and she found it necessary to return for treatment or examination almost each week until April 17, 1940. Her physician states that, as a result, "she will have a partial permanent disability there of the shoulder".
There can be no doubt that, at the time of the accident, the lock of the front door was defective in that the latch failed to catch when the door was closed. And the occupants of the house state that, when they left the premises by that door, they found it necessary to force it tightly into the frame in order to make certain that it would remain closed, and there is no evidence to overcome the effect of the testimony tendered by plaintiff and some of her witnesses that this condition had existed for some time, though there is much evidence in denial of the charge that it had been in existence since prior to the execution of the lease.
We have nothing in the record from which we can determine whether the district judge believed that the defect existed from before the commencement of the lease, except, possibly, the formal customary statement to the effect that he found the law and evidence to be in favor of the defendant.
Counsel for plaintiff, in oral argument before us, conceded that, because of the effect of article 2716 of our Civil Code, when, after a lease has been entered into, a lock or any part thereof becomes defective, such repairs as may be required shall be made at the expense of the lessee, and he conceded further that, therefore, if, as the result of such a defect, a third person is injured, redress may be had only from the tenant and the lessor may not be held liable. But he argued that where such a defect — already existing at the time the lease is executed — causes damage to a third person, the injured party may recover from the owner of the premises, and he maintained that here the defect was already in existence when the lease was entered into.
However, in a supplemental brief, he has asked to withdraw that concession and now argues that, if a third person rightfully on the premises is injured as the result of such a defect, even if the defect be one which, under article 2716, should be remedied at the expense of the tenant and even if it comes into existence during the lease, still the owner of the premises may be held liable to the injured person because of the effect of articles 670 and 2322 of our Civil Code since, under the former, an owner "is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect", and since, under the latter, "the owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it * * *".
Defendant, on the other hand, strenuously contends that, since the fall of plaintiff was caused by a defective lock, it is not necessary to determine whether the defect came into existence since the lease was entered into, declaring that, even if it was in existence prior to the commencement of the lease, there is in an owner no liability to a tenant nor to a third person for damages resulting from a defective lock if, at the time of the accident, the property is under lease to a tenant. Defendant asserts that this is true because of the effect of article 2716 and that particularly it is true where, as here, the tenant, on entering into the contract of lease, assumed "responsibility for the condition of the said premises, insofar as the condition of said premises affect any and all liability of the lessor".
In Tesoro v. Abate, La.App., 173 So. 196, 197, we find facts remarkably similar to those now under consideration. There a boarder in the leased premises "was going out of the rear door * * * and while in the act of closing said rear door, the outside doorknob thereof unexpectedly came off, causing him to lose his equilibrium and to be thrown down the back *Page 365 
stairs into the yard * * *". The question involved was whether the "boarder", a third person rightfully in the premises, might look to the owner of the building for redress. It appeared that in all probability the knob had been defective at the time of the commencement of the lease and that the tenant had noticed the defect and had called upon the owner to make the necessary repairs. The owner had furnished to the tenant a new knob and had told the tenant to affix it as best she could and that a screw to hold it would be furnished the next day. Before the screw was furnished the knob was negligently affixed and the accident occurred. Had the defect come into existence after the commencement of the lease, then, of course, because of the effect of article 2716, the repairs should have been made at the expense of the tenant since, as we have shown, "the repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make: * * * to windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place". And, in the Tesoro case, without pointing out the possible effect of the words "during the lease", we reached the conclusion that, since the repair necessary was one to a door knob and, therefore, should have been made at the expense of the tenant, the owner was not liable for the damage which resulted from the failure to make it. We are not at all certain that that conclusion is the logical result of article 2716 when considered in connection with articles 670 and 2322, and we have some doubt concerning the absence of liability in an owner to a third person when that third person — rightfully on the premises — is injured by one of those defects mentioned in article 2716, if it appears that the defect came into existence before the lease commenced. Possibly, because of the effect of articles 670 and 2322, providing that an owner must keep his buildings in repair and requiring that, if he fails to do so and delivers his premises to a tenant in a defective condition, he should not be permitted to rely upon article 2716 and avoid responsibility on the ground that, since there is a tenant who occupies the premises, the repairs should have been made by the tenant.
We have no doubt that the result reached by us in that case was correct because there, whatever may have been the cause of the defect, or however long it may have existed, the tenant undertook to make the repair and did so improperly and negligently. Thus, the damage was the result of the tenant's carelessness rather than of the original defect.
We do not find it necessary to reach a positive conclusion on the interesting question of whether there is liability to a third person rightfully in the premises in a lessor who delivers the premises to a tenant when there already exists one of the defects listed in article 2716 because we have reached the conclusion that the record does not show, by a fair preponderance of the evidence, that the defects complained of existed prior to the commencement of the lease.
The record shows that Mr. Charles, who was in charge of the property management department of Ernest A. Carrere's Sons, agents for the owner of the property, made an inspection before the lease to James was executed. He stated that when he made that inspection he "entered through that door", and he added that "had it been broken, why, we would have fixed it". It appears, too, that other repairs were found to be necessary, and it is admitted by all parties concerned that at least some of these were made. If the lock at that time was in the condition in which plaintiff would have us believe that it was, it is incredible that it would not have been noticed by Mr. Charles, and, had he, the inspector, noticed that the lock would not catch and that the door could not be made to stay closed, it is equally unbelievable that he would not have caused the necessary repair to be made. Why should he have agreed to make other repairs obviously not so urgent as that to the front door lock and then fail, after repeated demands, to undertake the very essential and comparitively inexpensive replacement of a defective lock? And, when we view the effect of such a defective lock from the point of view of the householder, it appears to us of such importance as to render unbelievable the statement that, for almost five months, it was not possible for those occupying the premises to lock the door after going out through it. We cannot but feel that a defect of that kind could not have existed for so long a time without positive and repeated demands for repairs. *Page 366 
The probabilities, then, viewed both from the point of view of the defendant and from that of the plaintiff, support very strongly the contention of defendant that the defect came into existence only during the lease, and, when we carefully analyze the testimony concerning the alleged reports of the defect, we do not find that the weight of it preponderates in favor of plaintiff.
James, the tenant, stated that when he agreed to take the premises he called attention to the necessity for such repairs and he said that the "most noticeable of all was the lock". He added that "they were supposed to fix that and nothing was done". We quite agree, as we have suggested, that a defect in the front door lock would have been "most noticeable of all", and yet it is quite certain that neither the inspector of the real estate agents, nor the inspector of the owning corporation, noticed this defect. James said that he had the understanding concerning the repair of this lock with "the man in the office that collects the rent, * * *"; the gentleman who sits "to the right as you enter the door". He added: "I don't remember his name", and he added, also, that he could not describe him. And the testimony of Mrs. James is about to the same effect. For instance, Mrs. James says that she and her husband "made a special trip to the office to get them to fix it", and yet there is no one who should have known of this complaint who had knowledge that they had come. While she is certain that she made reports of the defect, she did not know to whom they were made and could not describe the person who received them. But the men to whom such a complaint would ordinarily have been made all stated positively that no information concerning any such defect came to them.
Mr. Avegno was "property manager, field representative" of defendant corporation. He could not say that he had made a special examination of the lock, but he did say that his "attention had never been called to the knob".
In view of what we have said and Mr. James' statement that the defect in the lock was most noticeable of all, it is not believable that, had it existed prior to the commencement of the lease, the attention of Mr. Avegno would not have been called to it.
Mr. Charles was in charge of the property management department for Ernest A. Carrere's Sons, agents for defendant corporation. He stated that positively no report of any such defective lock was ever made to him and he testified, also, that "regardless of who it would have been given to * * * I would have received it". He stated, too, that he had checked his files himself and that in them there had appeared no "notation" or "notice" of any such defect.
Herman Toups was a rent collector for the Carrere agency during the first four months of the occupancy of the premises by plaintiff's grandson. He stated that he collected the rent from that property during that time and that never was any such complaint made to him.
Mrs. James also stated that she reported the defect to the collector every time the rent was paid. But, as we have shown, he, Toups, absolutely denied that anything was said to him. It is true that she testified that there were two collectors and intimated that she had probably made the complaints to the other, but she could not identify the other collector and Toups received no such complaints.
The matter is not one on which it can be said that the evidence substantially preponderates either way. But, viewing it as a whole and bearing in mind the probabilities, and, most of all, recalling that the judgment below was in favor of defendant, we conclude, as we have already stated, that the defect did not exist at the time of the commencement of the lease.
While it is true that the liability of an owner to persons rightfully on or in his property has been very much broadened and that articles 670 and 2322 have, by our jurisprudence, been liberalized to such an extent that the owner of a building is held to be almost an insurer of the safety of such persons (Heath v. Suburban Building Loan Association, et al., La.App., 163 So. 546), and, while it is also true that this liability exists even though the property is in possession of a tenant and even though the owner is not acquainted with the necessity for repairs, still, where, during the existence of a lease, injury results from failure of the tenant to make repairs which, by article 2716, must be made at his expense, none of our courts has gone so far as to hold the owner liable unless, *Page 367 
in spite of his lack of obligation to make the repairs, the owner has undertaken to do so and has done so negligently. Herbert v. Herrlitz, La.App., 146 So. 65.
The general rule in such cases — where the owner is held not liable for injuries resulting from such defects when it is shown that such defects came into existence during the lease — was established in Brodtman v. Finerty, 116 La. 1103, 41 So. 329, and has been recognized in Harris v. Tennis, 149 La. 295, 88 So. 912; Moore v. Aughey, 142 La. 1042, 78 So. 110; Yates v. Tessier, 5 La.App. 214, and Taul v. Graffato, 13 Orleans App. 338.
It is sometimes difficult to understand just what is the true foundation for this doctrine because it seems to be based, in the various cases cited, on the theory that since, as between the owner or lessor and lessee, there is placed on the lessee, by article 2716, the expense of making certain listed repairs, the lessor should be relieved even as to third persons, from liability for injuries resulting from those defects. This is a strange conclusion when we recall that that article and those others contained in that section of the code are obviously intended to control and do expressly control only the rights and obligations as between lessors and lessees.
There are other articles in our code — for instance, Nos. 2693-2695 et seq. — which are obviously intended to be effective only as between the lessor and the lessee, and this has been recognized by our Supreme Court notably in Klein v. Young,163 La. 59, 111 So. 495, 497, in which it was held that those articles have "nothing to do with the obligation resulting ex delicto in favor of any other person injured in consequence of neglect on the part of the owner of a building to keep it in repair". If those articles 2693-2695, have application only where there is involved a right or an obligation as between the lessor and his tenant, it is difficult to see how it properly can be said that article 2716, which, as between the lessor and the lessee, lists certain repairs which must be made at the "expense" of the lessee, affords protection to an owner when a third person is injured because of one of those defects, even though, as between the lessor and the lessee, the defect is one of those which, because of article 2716, should have been made at the expense of the tenant. Still, there is no gainsaying the fact that now, as we have said, this doctrine is well established.
It has been suggested that possibly the holding that there is no liability in an owner to a third person for injuries resulting from a defect which should have been repaired at the expense of the tenant has been based on the fact that, when the cases so holding were decided, there was in vogue in this state the doctrine — now abandoned — that a distinction should be drawn between the obligation of an owner to a "neighbor", or "passenger", or "passer-by" on the street and the obligation due to a tenant's guest, or to a member of the tenant's family who might be rightfully on or in the premises, and that whereas, as to such "neighbor", or "passenger", or "passer-by", the obligations of the lessor should be governed by articles 670 and 2322, the obligations as to the guest of the tenant, whose rights arise through the lease, should be governed by those articles (2716, 2693-2695, etc.) controlling the rights as between the lessor and the lessee.
It must be remembered that this was held in McConnell v. Lemley, 48 La.Ann. 1433, 20 So. 887, 34 L.R.A. 609, 55 Am.St.Rep. 319. There it was said that a guest of a tenant, who came upon the property because of the tenant's right to occupy the property, should not be treated at all as a third person, but should be controlled in his rights by those articles by which the tenant himself would have been controlled. If that doctrine still persisted, it might well be said that from it there has resulted the decisions in the various other cases, such as Harris v. Tennis, Moore v. Aughey, Yates v. Tessier and Klein v. Young, supra. But, in Cristadoro et ux. v. Von Behren's Heirs et al.,119 La. 1025, 44 So. 852, 854, 17 L.R.A., N.S., 1161 — decided very shortly after the decision in the McConnell case — that doctrine was entirely abandoned, and since then it has been consistently held that the duty owed by the owner to third persons exists as much in favor of persons rightfully on the premises as in favor of "neighbors", "passengers", or "passers-by", for there the Supreme Court, referring to the owner, said: "* * * he plainly and manifestly owes that duty as much to those who are rightfully in the house as to those who may happen to be passing by it."
We use the word "passers-by" advisedly, although it does not appear in article 670 of any of the editions of the Revised Civil Code of 1870. Nor does it appear in the Code of 1825, nor in the Code of 1808. In all editions of these codes the word which does appear is "passengers", and, with all respect to the translators and editors who prepared these editions of our Code, we cannot *Page 368 
avoid the statement that the word "passengers", in the sense in which it is used, makes no sense whatever. As a matter of fact, the word intended is "passers-by", as is shown in Louisiana Legal Archives, Volume III, Part 1, Compiled Edition of the Civil Codes of Louisiana, published by the Louisiana State Law Institute. See the following on page 386: "Note error in English translation of French text; `passengers' should be `passers-by'."
But, whatever may be the foundation on which there is now based the doctrine that article 2716 may be relied upon by an owner as absolving him from liability for the results of defects which come into existence after the beginning of the lease, that doctrine, as we have said, is now well established and must be followed by us. The rule was stated very recently in Tesoro v. Abate, supra, as follows: "A review of the foregoing authorities (excepting Hutchins v. Pick [La.App., 164 So. 173]) demonstrates that, where an injury to a third person, rightfully on the leased premises, occurs, during the existence of the lease, by reason of a failure of the tenant to make repairs due by him under article 2716, the landlord or owner is not liable to such third person in damages under articles 670, 2315, and 2322."
There is, therefore, no liability in defendant if the defect which caused the accident was one of those contemplated by article 2716 of the Code and if it came into existence — as we have found that it did — subsequent to the commencement of the lease. That it was such a defect as is contemplated by that article, we have no doubt. The lock failed to catch when the door was closed and this made it necessary that great force be exerted on the knob. So that, surely, the accident was the result of the defective lock, even though a knob is not expressly mentioned in the article. Even if a knob be not considered as a part of the lock, and, therefore, not within the express language of article 2716, still it would be included in the rather broad phrase "and everything of that kind, according to the custom of the place", for we have interpreted the words "according to the custom of the place" to mean that if, in a particular locality in which the property is situated, it is the custom for the tenant to fix certain other things not expressly set forth in the article, then the article applies to those things as well as those expressly included, provided only that the article which requires repair be similar to those listed in the article and that it be the custom in the particular locality for the tenant to fix such things. See Hutchins v. Pick et al., La.App., 164 So. 173.
It is not necessary that we consider the possible effect of the tenant's agreement that he would assume responsibility for the condition of the premises, and it is also unnecessary that we consider whether or not plaintiff herself was guilty of contributory negligence.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 404