STOULIG, Judge.
This is an action, sounding in tort, brought by the husband and daughter of the deceased, Elizabeth Harris Jarvis, to recover damages resulting from her death by carbon monoxide asphyxiation allegedly attributable to a malfunctioning wall heater in the defendant’s motel.
After a trial, judgment was rendered in favor of plaintiff Henry Jarvis in the sum of $11,129.05 and in favor of plaintiff Myrtle Mae Haywood for $10,000 and against the defendants, Ferdinand Prout, the motel owner, and his liability insurance carrier, The Home Indemnity Company of New York. From an adverse judgment, the defendants have lodged this suspensive appeal. Plaintiffs answered the appeal, praying that the judgment be increased to the amounts sought in their petition.
Briefly, the facts are as follows: In the late evening on October 7, 1964, one Solomon A. Borikins, using the alias of “S. A. Bee,” registered at the defendant’s hotel and was assigned Room 9. Within a few hours, sometime between 9 and 10 p. m., a female, later identified as the decedent, Elizabeth Jarvis, emerged from a taxicab and entered the room occupied by Borikins. Neither of these parties was ever again seen alive. At the time of registry, Bori-kins paid one day’s rent in advance and requested that he not be disturbed.
At this point it should be noted that the motel owner contends the room was rented for single occupancy and the registration card lists Borikins as the only occupant. The officers from the coroner’s office and the sheriff’s department of Jefferson Parish, who, during the course of their investigation viewed the registration card, which was subsequently lost, testified that the registration was listed in the names of “Mr. and Mrs. S. A. Bee.” Their investí- *246 gation reports reflected this fact. The trial judge correctly concluded that the evidence preponderated in favor of the finding that the motel room was rented for occupancy by Borikins and Mrs. Jarvis.
Having neither seen nor heard from Borikins during the following three days, the defendant, on October 10, at approximately 7 p. m., attempted to contact him about the payment of the accrued rental and his intention as to the further occu.pancy of the room. His first attempt to do so by telephone was unsuccessful. Then, when knocking on the door of the motel room produced no response, Mr. Prout used his passkey to gain entry to the room. Although a chain guard prevented the complete opening of the door, he was able, through the restricted aperture, to observe the nude body of Borikins lying on the bed, apparently deceased. The local police were immediately notified, and, coincidental with their forced entry into the room, the corpse of Mrs. Jarvis was discovered on the bathroom floor. Following the customary investigation, the bodies were removed and the room sealed.
The postmortem examination established that Mrs. Jarvis died on October 9, 1964, at 7:45 p. m., and the forensic laboratory toxicology report reflected a carbon monoxide level of 40% saturation. Based upon the autopsy and toxicological findings, the coroner of Jefferson Parish assigned “asphyxia due to carbon monoxide” as the cause of death.
The trial court, in holding for the plaintiffs, found that the heater was neither properly vented nor maintained, and based its judgment on LSA-C.C. arts. 670, 2322 and 2695. While this court is in agreement with the result reached by the lower tribunal, a careful review of these articles and the related jurisprudence convinces us that they are not applicable to the factual circumstances presented by this suit and that liability should have been predicated on a different basis, which we will discuss at a later point.
LSA-C.C. arts. 670 and 2322 read as follows :
Art. 670. “Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect.”
Art. 2322. “The owner of a building is answerable-for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
Article 670 is clearly inapposite to this case for two reasons. First, the deceased does not fall into the category of persons protected by that article, which imposes a duty upon the owner to keep his building in repair so that its fall will not injure “neighbors" or “passengers"[1] In interpreting this article the Louisiana Supreme Court in McConnell v. Lemley, 48 La.Ann. 1433, 20 So. 887 (1896), held that it does not apply to “the person who seeks admission to the premises, or who goes there upon the invitation of the owner or tenant either on business or pleasure.” 20 So. 887, 889. Rather, it applies only to neighbors or passers-by. Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970). Thus, it is clear that plaintiff, a guest in the hotel, cannot invoke the protection of this article.
Secondly, Article 670 is inapposite for the same reason that Article 2322 is not applicable and that is that the cause of the injury within the contemplation of those articles differs substantially from the causes which are alleged to have been re *247 sponsible for the damage in this instance. Article 670 envisions the “fall” of the building or any part of the material composing it, and Article 2322 requires the damage to be a result of its “ruin.” Under the jurisprudence of Louisiana, these requirements are not met in the instant case. Neither the allegation that the defendant failed to properly maintain the heater nor the claim that it was improperly vented brings this suit within the ambit of Articles 670 and 2322. In Guidry v. Hamlin, 188 So. 662 (La.App.Orl.1939), the court stated at page 664:
“ * * * Article 2322 does not apply to the situation for the reason that that article, like C.C. art. 670, has no reference to any situation except that in which some part of the building collapses, or breaks, or gives way. We note the word ‘ruin’ as it appears in Article 2322 and the word ‘fall’ in Art. 670. The owner is not made liable under either article because there is a ‘vice’ in original construction, unless there is a ‘ruin’ of the building under the one article, or a ‘fall’ of some part of the building under the other. If the framers of the Code had intended to make liability, under either of these articles, depend upon the dangerous design of the building — which is complained of here — they would not have provided that the liability should be made to depend upon the ‘ruin’, or upon the ‘fall’ of some part thereof. * * * ”
This view was. confirmed in the recent Supreme Court case of Davis v. Royal-Globe Insurance Companies, supra.
Article 2695 is equally inapplicable. It places the duty on the lessor of guaranteeing the lessee against all vices and defects in the thing leased, even if the lessor has no knowledge of the defect and even if it arose after the lease was made. This article places a severe duty on the lessor and is to be restricted to the lessor-lessee relationship.
LSA-C.C. art. 3232 defines innkeepers as those “who keep a tavern or hotel, and make a business of lodging travelers.” Louisiana jurisprudence is consistent that a guest in a hotel or motel is an invitee to whom is owed the duty of ordinary care to keep the premises in a reasonably safe condition. In De Latour v. Roosevelt Hotel, 1 So.2d 353 (La.App.Orl.1941), the court stated at page 355:
“The law of the case is well settled and the issues presented for our determination involve chiefly questions of fact. Since it is conceded by the defendants that the plaintiff was a patron of the hotel and occupied the status of an invitee, the hotel owed to him a duty of ordinary care to keep its premises in a reasonably safe condition. See Bartell v. Serio, La.App., 180 So. 460; Greeves v. S. H. Kress & Co., La.App., 198 So. 171; Farrow v. John R. Thompson Co., 18 La. App. 404, 137 So. 604; Bell v. Feibleman & Co., La.App., 164 So. 273; and Lawson v. D. H. Holmes Co., Ltd., La.App., 200 So. 163.”
To this same effect is the more recent case of Caruso v. Aetna Insurance Company, 186 So.2d 851 (La.App. 1st Cir. 1966), in which the court quoted with approval the definition of invitee used in Alexander v. General Accident Fire & L. Assur. Corp., 98 So.2d 730, 732 (La.App. 1st Cir. 1957):
“(3) An invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter for their mutual advantage; and to him, the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger.”
In a recent Louisiana appellate decision the court held that a motel operator owes a duty to an invitee or a business guest to exercise reasonable care for his safety and to keep the hotel premises in a reasonably *248 safe condition. See Williams v. Candlelight Inn, 224 So.2d 548 (La.App. 3d Cir. 1969), and the cases therein cited. In the course of its decision, the court in the Williams case stated at page 551:
“ * * * [T]he motel keeper is under a duty to keep the premises in a reasonably safe condition, and that includes a duty to make reasonable inspections to see that the furniture and fixtures in the room are safe. The guest is under no duty to inspect the furniture and fixtures as to their safety before using them, although he is required to guard against dangers which are ‘obvious’ or which should be ‘observed’ by him in the exercise of reasonable care. * * * ”
The foregoing discussion should make quite clear the importance of the status of the parties and the interpretation which the courts have given the above-cited articles of the Civil Code in determining the duty owed by defendant to the decedent. Applying the jurisprudence, it is clear that the. defendant occupied the status of an innkeeper and owed the duty to keep his premises in a reasonably safe condition.
After a careful analysis of the testimony contained in the record we are convinced that the defendant breached this duty in failing to keep the heater in a safe operating condition by neglecting ordinary, reasonable and periodic maintenance required by this type of equipment.
It was the expert opinion of Chester A. Peyronnin, Jr., a mechanical engineer and a member of the faculty of Tulane University for 22 years, that this type heater should be cleaned, inspected, and adjusted for proper operation at the beginning of each operating season and preferably at sometime partially through the season. In highly persuasive testimony he explained that the reason for this minimum requirement for this type heater is to assure the removal of all accumulated lint and foreign matter which may have collected on the burner and to make such adjustments as may be necessary to prevent its malfunction resulting in emission of poisonous carbon monoxide. He explained that when there is complete combustion of a fuel, such as natural gas, the normal by-products are carbon dioxide and hydrogen vapor. However, if there is not total combustion due to insufficient oxygen in the burner caused by trash or lint on the burner or an improper valve adjustment, then carbon monoxide is generated. It is for this reason that regular periodic inspection and maintenance is so critically necessary.
The testimony in the record shows that the heaters had not been cleaned and adjusted by a qualified mechanic since at least January of 1962, some two years and seven months prior to the date of the tragedy. (It is interesting to note that while the statements of defendant’s plumber indicate that the heater in Room 9 was cleaned and adjusted on January 7, 1962, the itemized invoice for such work performed that day lists all of the rooms except three, one of which is Room 9, occupied by the decedent. Defendant maintains that he and his janitorial assistants kept the heaters clean. It hardly needs pointing out that these efforts on the part of the defendant do not relieve him of the responsibility of having qualified personnel attend to this crucial task.
Nor is there any merit in defendant’s contention that his program of maintenance was in accordance with the requirements of the Jefferson Parish ordinances since Mr. Peyronnin testified, and Emile Tosso of the Department of Regulatory Inspection confirmed, that the Parish has no such requirements and the building code requires only the approval of installation of the heating systems.
Likewise, the semiannual report of Pierre J. Morere of the Parish Board of Health showing that the room had been inspected should be given little weight since it concerned itself with cleanliness and ventilation of the accommodations and not the heating systems.
Under the most liberal evaluation, this haphazard program of maintenance cannot *249 be construed as constituting the exercise of ordinary and prudent care to keep the unit in a reasonably safe condition.
Defendant produced as a witness Raymond Jefferson, a plumber, who testified that he examined the heater immediately after the sealed room was opened and found it to be working in proper order. Aside from the obvious fact that there must have been some malfunction, it is noteworthy that Mr. Peyronnin stated in his testimony that it was quite possible that the improper combustion of gases in the chamber, producing the carbon monoxide, was caused by a maladjustment which subsequently cleared itself.
It has also been suggested to the court that the emission of carbon monoxide was due to improper venting of the heater in question. In view of the fact that this heater was used by a large number of people over a period of years without harm the court finds this theory less than persuasive.
It has been further suggested that the malfunction of the heater was caused by some fault of Mr. Borikins or Mrs. Jarvis, who took it upon themselves to ignite the pilot light of the heater while allegedly in an intoxicated condition. Yet no evidence whatsoever was introduced to show that they in any way caused the heater to malfunction.
Although there is much expert testimony in the record as to the probable or likely cause or combination of causes for the carbon monoxide fumes entering Room 9, there is no absolute consensus as to the exact cause of the tragedy. Nevertheless, after a careful review and consideration of all the evidence, we are constrained to hold that it preponderates in favor of the conclusion that defendant’s failure to properly maintain the heaters in his motel was a decisive factor in the emission into Room 9 of the poisonous fumes. It is the further conclusion of the court that this failure on his part constitutes a clear breach of his duty to keep his premises in a reasonably safe condition and that he is therefore liable for the resulting damages.
The trial court awarded $10,000 to the daughter and $11,129.05 to the surviving spouse.
Although the daughter was 32 years of age and married, the record clearly reveals a close relationship with the mother and a dependence upon the mother, particularly because of the daughter’s poor health.
The record is equally clear that, during their 11 years of marriage, the decedent provided her husband with companionship and affection, while also providing meals and other household services.
The award apparently includes funeral expenses in the amount of $1,129.05.
We find no abuse of discretion in either award.
For these reasons the judgment of the lower court is affirmed. Appellants are to pay the cost of this appeal.
Affirmed.

. The annotations of LSA-C.C. art. 670 at page 518 state: “The word ‘passengers’ in this article is due to an error in the English translation of the French text, and should be ‘passers-by’. Lowe v. Home Owners’ Loan Corporation, App., 1941, 1 So.2d 362, affirmed 199 La. 672, 6 So.2d 726.”